No. 31.—JOHN REYNOLDS, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

Under an indictment for murder, the jury may find the prisoner guilty of the lesser offence of manslaugeter, either voluntary or involuntary, and the verdict will be legal, although there is no count for manslaughter in the indictment.

The statute of limitations does not run against an indictment found for murder, though on the traverse the prisoner is found guilty of manslaughter only.

Upon an indictment found for manslaughter only, the statute would run from the death, and not from the time the mortal wound was given.

The practice in England, upon the construction of the act of 33 *Edward* 1, of *passing* jurymen in criminal cases, until a whole panel is exhausted, and a jury not made, before the Crown can be called upon to show cause, is not authorized in this State, since the adoption of the penal code.

As the jurors are called, the State must put them upon the prisoner, or otherwise challenge them, either peremptorily to the number allowed by law, or for cause.

The act of 1843, prescribing certain questions to be propounded to jurors, to test their competency for the trial of capital offences, is not applicable to any case which arose previous to its passage.

A juror who states upon oath, in answer to said statutory questions, that he has formed and expressed an opinion with regard to the guilt or innocence of the prisoner from hearsay, is not an *impartial juror*, as contemplated by the Constitution, which declares that, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an *impartial jury*."

Facts that occurred at, or about the time of the fatal rencounter—such as, that the deceased was armed ; that, some twenty or thirty minutes before the difficulty, he had fired off and reloaded two pistols, and put them in his pantaloons pockets, at his own house, which was two or three hundred yards off, and then started immediately for the public square, where the rencounter took place ; that when he arrived at the public square, he had upon his person, and in his pocket, a loaded

pistol, or pistols, of the same kind and description as the one found at his side on the ground where he fell, after being shot by the prisoner—are competent, and admissible in evidence, without precedent proof that the prisoner had knowledge of them.

This was an indictment for murder, in the Superior Court of the county of Stewart, tried before Judge Alexander, at April Term, 1846, and resulted in a conviction of the prisoner for voluntary manslaughter. The bill of indictment in this case contained a single count for murder, and was found at the October adjourned term of said court, in the year 1844. At the April Term thereafterwards, the prisoner was arraigned, and plead " not guilty." The murder was alleged in the indictment to have been committed on Jefferson J. Lamar, by the prisoner, in Lumpkin, Stewart county aforesaid, by shooting. The mortal wound was given on the 4th day of October, 1840, of which the deceased languished until the 15th day of December, 1840, when he died of said mortal wound, in the said county.

The case came on to be tried at the said April Term, 1846, and thereupon the court caused to come a panel of forty-eight men as jurors, that a jury of twelve might be obtained to try said issue ; and the said panel having been called over, and found present, the court caused the same to be put upon the prisoner, and him to be informed that the said panel would again be called ; and that then, if he had any cause of challenge against them, or any of them, he should make it known, as they were being called to the book to be sworn, and before they were sworn, and the court would hear him. The clerk then commenced to call said panel one by one, in the order in which their names were entered on the *venire*, beginning at number one, and continuing through the panel, ending with number forty-eight. The juror number one being acceptable to both parties, was sworn in chief ; number two was peremptorily challenged by the prisoner. The juror number three, Cyrus Lee, was called, when the counsel for the State objected to him, but assigned no cause, claiming for the State the right to pass such juror by until the whole panel should be gone through with, and be found insufficient to make a full jury of twelve ; and that for so doing the State was not bound to show any cause, or to lose any of the peremptory challenges given by virtue of the penal code : And thereupon the counsel for the prisoner objected to the right so claimed on the part of the State, which objection was overruled by the court, and the juror Lee was passed by ; to which decision of the court the counsel for the prisoner excepted. The call of the jurors was then resumed, and the counsel for the State caused divers jurors to be passed by, as in the case of the juror Lee. After thus completing the call of said panel the first time, and having failed to make up a jury of twelve, the call was resumed of those who had been passed by, beginning at the juror Lee, and continuing through, and still failed to make up a jury of twelve.

Elijah Lindsey, one of the jurors, being called and sworn on his *voire dire*, the solicitor-general proposed to propound to him the questions as provided by the act of the legislature of 1843, to wit : " Have you, from having seen the crime committed, or from having heard any part of the evidence delivered on oath, formed and expressed any opinion with regard to the guilt or innocence of the prisoner at the bar ?" To which the counsel for the prisoner objected, and the objection being overruled by

the court, said question was propounded to the juror, and the counsel for the prisoner excepted.

Two other panels of twenty-four men each were then successively called in, and put upon the prisoner, the State passing by many jurors, as in the case of the juror Lee. Samuel Starr, whose name appeared upon the third and last panel, being sworn on his *voire dire*, and in answer to the question aforesaid, stated that he had, from report, formed and expressed an opinion with regard to the guilt or innocence of the prisoner. The counsel for the prisoner thereupon objected to his competency as a juror, because such formation and expression of opinion showed bias or prejudice ; which objection being overruled by the court, and the juror pronounced competent, the counsel for the prisoner excepted.

A jury of twelve men having been made up and sworn to try said issue, the counsel for the state introduced several witnesses, who were sworn and examined, and proved the homicide, and closed their case.

The counsel for the prisoner then introduced divers witnesses, and among them John S. Randle was introduced, and being sworn, was asked the following questions :

1st. Whether, when Lamar returned to the house at about four o'clock on the evening of the day of the alleged shooting of him by Reynolds, he (Lamar) was armed ?

2d. Whether, when Lamar returned from his house to the public square in Lumpkin, twenty or thirty minutes after having gone thither, he was armed with two pistols ?

3d. Whether, when Lamar was so at his house, he did not fire off and reload his two pistols, and put them in his pantaloons pocket, and start off again immediately to the public square in Lumpkin ?

4th. Whether, when Lamar returned to the public square aforesaid, he did not have loaded, upon his person and in his pockets, a pistol or pistols of the same kind and description as that found at his side on the ground when he fell after being shot.

The counsel for the State objected ; and the court below decided that said several questions were illegal, and should not be answered by the witnesses, because the testimony theretofore delivered in said case did not show that the prisoner at the time of the shooting of Lamar had received any notice of any of the facts proposed to be proved by the witness, Randle, by said questions. And thereupon the counsel for the prisoner excepted.

The said case, after argument of counsel on both sides, was submitted to the jury under the charge of the court, and the jury returned their verdict, finding the prisoner guilty of voluntary manslaughter.

And thereupon the counsel for the prisoner, before judgment on said verdict, submitted to the court, after due notice to the state's counsel, a motion in arrest of the judgment, and notice also of a motion for new trial to be made, if the motion in arrest should be overruled.

The motion in arrest of judgment was based upon the following grounds :

1st. Because the indictment in said case was for murder only, and not for manslaughter.

2d. Because the verdict contained no finding by the jury as to murder, but only as to manslaughter.

3d. Because the indictment in said case was not found and filed in said court, within four years next after the commission of the offence charged in the bill of indictment.

4th. Because the jury found the defendant guilty of manslaughter, upon a bill of indictment for murder, which was not found and filed in said court within four years next after the commission of the offence therein charged.

5th. Because the record in said case is in other particulars informal, insufficient and void, and the legal judgment of the court cannot be pronounced upon it.

And, if overruled in the foregoing motion, the prisoner would then move for a new trial on the following grounds:

1st. Because against the motion and objection of prisoner's counsel the court permitted the state to challenge and pass divers jurors when called, (after the array had been put upon the prisoner,) without compelling the state to show any cause for such challenges, or to exhaust any of its peremptory challenges, under the penal code, until the whole panel had been gone through.

2;. Because the court decided that the questions testing the competency of jurors, provided by the act of 1843, might be propounded to jurors in said case, and because thereupon the said questions were propounded to divers of them, notwithstanding that said offence was charged and proven to have been committed prior to said act.

3d. Because the court decided that the answer of a juror to the first of said statutory questions, that he had formed and expressed an opinion in relation to the guilt or innocence of the prisoner from hearsay, did not prove said juror to have any prejudice or bias for or against him, or to be in any respect incompetent.

4th. Because the evidence showed that manslaughter, in said case, was barred by the statute of limitations.

5th. Notwithstanding the bill of indictment charged, and the evidence proved, the offence to have been committed on the 4th day of October, 1840; and the bill of indictment was not found and filed in court till November, 1844, more than four years after the commission of the offence, yet the court charged the jury that they might find the prisoner guilty of manslaughter.

6th. Because the court refused to allow the questions hereinbefore recited, to be put to the witness John S. Randle.

7th. Because the prisoner was not tried and convicted by a jury of good and lawful men, duly summoned, empanelled and sworn, according to law.

The motion in arrest, and also the motion for a new trial, were successively heard and overruled by the court below, and judgment was pronounced against the prisoner. To all which the counsel for the prisoner excepted.

The court charged the jury on said trial that they might find the prisoner guilty of manslaughter, either voluntary or involuntary upon said issue, under the evidence given in upon the trial of said case. And the counsel for the prisoner excepted to said charge.

Error was assigned in each of the matters excepted to.

HINES HOLT and HENRY L. BENNING, for the prisoner.

A. H. CHAPPELL, for the State.

On the 4th of October, 1840, the prisoner shot Mr. J. L. Lamar in the public square in Lumpkin. Mr. Lamar died of the wound in December, 1840.

The indictment for murder, under which the present conviction took place, was found by the grand jury at the Oct. Term of Stewart Superior Court, a little more than four years after the giving of the mortal wound, but less than four years after the death of Mr. Lamar therefrom.

The statute of limitations was not set up, or insisted on as a defence, either by pleading or in any other manner, during the pendency of the indictment. It is only after the trial had terminated by a conviction for manslaughter, that the prisoner for the first time lays hold of the statute, as one of his grounds, in a motion for a new trial.

*1st Objection.* That it should have been pleaded, and could not have been taken advantage of without pleading, even if the indictment had been for manslaughter. Nor does the circumstance of the time of giving of the mortal wound, or of the killing, appearing on the face of the indictment, to have been more than four years before the filing of the same, do away the necessity of pleading directly, that the indictment was not found and filed within four years after the commission of the offence.—*Ewen* vs. *Jones*, 6 *Mod.* 26. In the same case it was said by the court, the statute of limitations being a statute barring of right, ought to be taken strictly.

*2d Objection.* And still further, even though the indictment had been for manslaughter, and the *stat. lim.* pleaded thereto, the plea would have been bad, because, though the mortal wound was inflicted on the 4th Oct., 1840—more than four years before the indictment was found—yet death did not ensue therefrom till the middle of Dec. afterwards, less than four years before the finding of the indictment. And it is quite clear that the time of the death, and not that of the wounding, is the period from which the statute commences running.—*Petersdorf Abr.*, vol. 12, p. 340, *note.*

The offence is not complete till the death, and therefore, at common law, if a man died in one county of a mortal stroke received in another, it was the general opinion that he was indictable in neither county; to remedy which, *stats.* 2 *and* 3 (*Wen.* 6,) were passed, making the offence indictable in the county where the death took place.—2 *Hawkins*, 315–16.

But, *3dly.* It is not an indictment for manslaughter, but for murder, to indictments for which there is no limitation of time set by the statute. The attempt now is to put a conviction for manslaughter (although on an indictment for murder) on the same footing with an indictment for manslaughter, which cannot be done; because, 1st, It is the indictment which is barred by the statute in all the cases to which its bar is applicable. But in no case is the bar of the statute applicable to an indictment for murder.

At common law there was no limitation in any case to a criminal prosecution by indictment.—*Petersdorf Abr.* vol. 12, p. 340; *Donan* vs. *Maestaer*, 5 *Esp. R.* 92.

Stats. lim. generally are to be construed strictly as laid down in 6 *Mod.* 26, because they are in bar of right.

Moreover, statutes in restraint, derogation, or alteration of the common law, or of common law rights, are to be strictly construed; for *sts.* are not presumed to make any alteration in the common law, further or otherwise than the act expressly declares.—*Bac. Abr.* 6, 384; 11 *Mod.* 150.

### Objection to the mode of challenging Jurors.

At common law, the king might challenge peremptorily as many as he saw fit, of any jury returned to try a cause to which he was party.—*Hawkins' Pleas Con.* 579–80; *Co. Lit.* 156.

But by *st.* 33 *Edw.* 1, all peremptory challenges were taken away from the king, and he was restricted to challenges for cause; settled, that the king did not show

his cause of challenge till the whole panel be gone through, and it appear that there will not be a full jury without the person challenged.—*Ib. Harg. Note,* 282, *to Co. Lit. ; 4 Bl.* 353 ; 1 *Chit. C. L.* 533–4 ; *Joy,* 143.

And so was the law of Geo. till the penal code of 1833, which, for the first time, gave the State peremptory challenges.—*Prin. Dig.* 660.

This provision is merely affirmative and cumulative, giving to the State half the number of peremptory challenges to which the accused is entitled. It is a palpable *non sequitur* to say, that by such a provision, the State's pre-existing right of challenging for cause is affected in any way, either as to its extent, or as to the manner in which it shall be exercised.

*By the Court*—WARNER, Judge.

In this case a motion was made in arrest of judgment, and for a new trial. The counsel for the plaintiff in error moved to arrest the judgment on the following grounds : Because the indictment was for murder only, and not for manslaughter. Because the verdict contained no finding by the jury as to murder, but only as to manslaughter. Because the indictment was not found, and filed in court, within four years next after the commission of the offence charged in said bill of indictment. Because the jury found the defendant guilty of manslaughter upon a bill of indictment for murder, which was not found and filed in said court within four years next after the commission of the offence therein charged ; and because the record in the said case is in other particulars informal, insufficient and void, and the legal judgment of the court cannot be pronounced upon it. The first and second grounds taken in the motion to arrest the judgment, will be considered together. By the first section of the fourth division of the penal code, (*Prince's Dig.* 622,) homicide is declared to be, the killing of a human being, of any age or sex, and is of three kinds—murder, manslaughter, and justifiable homicide. Manslaughter is the unlawful killing of a human creature, without malice, either express or implied, and without any mixture of deliberation whatever ; and is homicide, inferior in degree to that of murder. When the jury found the defendant guilty of manslaughter, it negatives the idea that he was guilty of murder, and in our judgment it was clearly competent for the jury to find the defendant guilty of the lesser offence of manslaughter, on an indictment for murder, without any count therein for manslaughter.—1*st Russell on Crimes,* 474 ; 1*st Hale,* 449 ; 2*d Hale,* 302 ; 1*st Chitty's Criminal Law,* *top page,* 206. The third and fourth grounds taken in arrest of judgment, will also be considered together. By the thirty-fifth section of the fourteenth division of the penal code (*Prince's Dig.* 662) it is declared, " Indictments for murder may be found and prosecuted, at any time after the death of the person killed. In all other cases, except murder, where the punishment is death, or perpetual imprisonment, indictments shall be filed and found in the proper court, within seven years next after the commission of the offence, and at no time thereafter. In all other felonies, the indictments shall be found, and filed in the proper court, within four years next after the commission of the offence, and at no time thereafter." It is contended, inasmuch as the defendant was found guilty of voluntary manslaughter only, it is such an offence as would be barred by the statute in four years. The indictment was for murder, and we are inclined to the opinion, that the statute does not run against indictments

found for that offence, although on the traverse the defendant should be found guilty of manslaugnter only; but it is not necessary for us to place our opinion in this case on that ground.   By the record, it appears, the indictment was found at the October adjourned term of the Superior Court, in the month of November, 1844; and Lamar, the deceased, did not die until the 15th December, 1840, so that four years had not elapsed from the death of the party alleged to have been killed until the finding the bill of indictment in the proper court.   The homicide was not in fact consummated until the death of Lamar, and the defendant could not have been indicted therefor until that time.   The record presents nothing which, in our opinion, would authorize an arrest of the judgment upon either of the grounds taken, and that the court below decided correctly, in overruling the same.

The first ground taken for new trial is, that the court permitted the State to challenge and pass divers jurors when called, after the array had been put upon the prisoner, without compelling the State to show any cause for such challenges, or to exhaust any of its peremptory challenges under the penal code, until the whole panel had been gone through.   In the case of the *State* vs. *Sealy,* decided during the present term of this court, we held, the decision of the court below, permitting the counsel for the State to pass jurors without peremptorily challenging them, as required by the penal code, was erroneous, and do now so rule in this case.

The second ground of error assigned is, that the court below erred, in deciding that the oath required by the act of 1843, testing the competency of jurors, might be propounded to them, notwithstanding the offence for which the defendant was indicted was charged, and proved, to have been committed before the passage of that act.   By the code of 1833, which was the law at the time of the commission of the offence charged in the indictment, the oath prescribed to jurors for the trial of all crimes punishable by death, or imprisonment and labor in the penitentiary, was in the words following: " Have you formed and expressed any opinion in regard to the guilt or innocence of the prisoner at the bar ?"   By the act of 1843 this oath was altered, and the following oath prescribed : " Have you, from having seen the crime committed, or having heard any part of the evidence delivered on oath, formed and expressed any opinion in regard to the guilt or innocence of the prisoner at the bar ?"   It was contended at the bar, the act of 1843, when made to apply to the defendant for an offence committed prior to its passage, was an *ex post facto* law.   To this it was replied, the act of 1843 did not aggravate the crime, nor the punishment thereof, but only affected the mode of the trial.   In *Colden* vs. *Bull,* (3d *Dallas Rep.* 386,) Mr Justice Chase, in stating what he considered to be *ex post facto* laws, prohibited by the constitution, says : " Every law that alters the legal rules of evidence, and receives less, or different testimony than the law required at the time of the commission of the offence, in order to convict the offender; all these, and *similar* laws, are manifestly unjust and oppressive."   By the law, as it existed at the time of the commission of the offence, the defendant was entitled to be tried by those who had neither formed nor expressed *any* *opinion*, with regard to his guilt or innocence, either from the information of others, or any other of the many circumstances which enable mankind to form their opinions with regard to the conduct of their fellow-citizens.

By the act of 1843, the right to select his triers was greatly circumscribed. If the juror put upon him by the State had formed and expressed an opinion in favor of his guilt, yet, if he had not formed and expressed such opinion, from having seen the crime committed, or hearing the evidence delivered on oath, he would be a competent juror. The *practical* effect of compelling the defendant to select his jurors under the rule prescribed by the act of 1843, would be greatly to impair his chance for acquittal, and enhance the danger of his conviction. If the legal rules of evidence have not been altered, for the purpose of *convicting him of the offence* with which he stood charged, the legal rules of evidence most certainly have been altered, by which the competency of the jurors is to be ascertained, who are to *try the defendant for the offence.* By the act of 1843, his chances for escape are greatly diminished, and his conviction rendered much more certain. Although the act of 1843 may not be *technically* an *ex post facto* law, yet, when made to apply to the trial of the defendant for an offence committed before its enactment, gives to it a *retrospective* operation, which, in our judgment, ought not to be sanctioned in the administration of *criminal law.* The defendant, in our opinion, was entitled to have had his triers selected according to the rules of evidence, prescribed by the law, as it existed at the time the offence was committed. The next ground of error assigned for new trial is, that the court below decided, that a juror who answered he had formed and expressed an opinion, in relation to the guilt or innocence of the prisoner at the bar, from report or hearsay, was a competent juror. The Constitution declares : " In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an *impartial jury.*" Can he be said to be an impartial juror, who has both formed and expressed an opinion with regard to the guilt or innocence of the accused ? But it may be replied, that opinion was formed and expressed from the *report* or *hearsay* of other persons. Is it not an opinion, however, both *formed and expressed?* And he knows but little of the human mind who does not know the difficulty which is to be encountered, in combatting and removing such preconceived opinions. The fact that the opinion was formed and expressed from the report, or hearsay of others, does not in the least obviate the difficulty. How many men form and express their opinions, both as it regards religion, politics, and the moral conduct of their fellow-citizens, from the statements of their neighbors, in whom they have confidence ? Indeed, there are many men who have more confidence in the expressed opinions of their intelligent neighbors, than they have in their own. We are, therefore, all of the opinion, a juror who states, on oath, he has formed and expressed an opinion, with regard to the guilt or innocence of the prisoner, from hearsay, is not an *impartial juror*, as contemplated by the Constitution.

The fourth ground assigned for error is, that the court charged the jury they might find the prisoner guilty of manslaughter, either voluntary or involuntary ; whereas, he should have charged the jury that they could not so find. We are of the opinion, the charge of the court, as given, was correct and proper, under the law. The defendant was indicted for the offence of murder ; manslaughter is an inferior grade of homicide, for which the defendant might properly have been found guilty, as has been

already stated, in disposing of the motion in arrest of judgment in this case.

The fifth ground of error assigned in the motion for new trial, is, that the court refused to permit certain questions to be propounded to John S. Randle, a witness for the defendant. The counsel for the defendant, on the trial, introduced Randle as a witness in his behalf, and proposed to examine him as to the following facts : First, whether, when Lamar returned to his house, at about four o'clock in the evening of the day of the alleged shooting of him by the defendant, he (Lamar) was not armed ? Second, whether, when Lamar returned from his house to the public square in Lumpkin, twenty or thirty minutes after having gone to his house, he was not armed with two pistols ?

Third, whether, when Lamar was so at his house, he did not fire off and reload his two pistols, and put them in his pantaloons pockets, and start off again immediately to the public square aforesaid ; and whether Lamar's said house was not within two or three hundred yards of the public square in Lumpkin ?

Fourth, whether, when Lamar returned to the public square in Lumpkin aforesaid, he did not have, loaded, upon his person, and in his pockets, a pistol, or pistols, of the same kind and description as that found at his side, on the ground where he fell, after being shot ?

This evidence was rejected by the court, on the ground, it did not appear the defendant had received any *notice* of the facts proposed to be proved by the witness. We are all clearly of the opinion, the court below committed error in rejecting this testimony. The facts proposed to be proved were immediately connected with the transaction ; indeed, constituted a part thereof. As this case must undergo another investigation, perhaps it would not be proper for us specially to point out the importance of this testimony to the defendant. It is sufficient for us to declare that, in our judgment, the evidence was *competent*, and ought to have been received ; leaving it to the jury to have given it such consideration as they might have thought it entitled to, as a *part of the transaction* which they were empaneled to investigate. Nor do we consider that the fact of *notice* to the defendant, had anything to do with the competency or incompetency of the testimony offered. The evidence is offered to prove *distinct facts*, which occurred at or about the time the fatal rencounter took place. If the defendant had attempted to prove a *threat*, on the part of the deceased, to do him some bodily injury, unconnected with any overt act, then, perhaps, it would have been necessary to have shown the defendant had a knowledge of such threat : but nothing of that kind was attempted to be proved by the witness.

The judgment of the court below must therefore be reversed, and a new trial granted, on the following grounds : First, because the court erred in permitting the State to challenge certain jurors in the record mentioned, without showing any cause, until after the whole panel had been gone through ; it being the opinion of this court, the State is only entitled to such challenges as are allowed by the penal code. Second, because the court committed error, in permitting the questions, testing the competency of jurors, provided by the act of 1843, to be propounded to them, the offence having been committed before that time. Third,

because the court below committed error in deciding a juror was competent, who answered, he had formed and expressed an opinion, in relation to the guilt or innocence of the defendant, from hearsay or report. And, fourth, because the court erred in refusing to allow the questions propounded to John S. Randle, mentioned in the record, to be answered by the witness for defendant.