## 32114. PERRY *v.* THE STATE.

Decided October 15, 1948. Rehearing denied December 15, 1948.

*Stevens & Stevens,* for plaintiff in error.

*J. Cecil Davis, Solicitor-General,* contra.

MacIntyre, P. J. J. D. Perry was indicted and tried in the Superior Court of McDuffie County for the murder of Emmett Dunn Jr., and was found guilty of involuntary manslaughter in

the commission of an unlawful act without intent to kill. He filed a motion for a new trial and an amendment thereto containing three special assignments of error, and after a hearing the motion was overruled. To this judgment he excepts.

In special ground 1, the defendant contends that the court committed reversible error by ruling out certain testimony elicited upon the cross-examination of John Marion Dunn. The material part of such testimony, set out in this special ground, is as follows: "Q. Did you ever work there for Mr. Perry? A. Yes, sir. Q. You got along all right with Mr. Perry? A. Yes, sir." The grounds of objection urged were that the defendant was charged with murder, that the deceased and the witness (his brother) were moving along the street together, that the defendant contended in his defense that the shooting was accidental; and hence that the evidence was admissible to negative any contention that the shooting was intentional or was done with malice.

The evidence was not sought to be introduced for the purpose of illustrating the credit of the witness by showing his feeling toward the defendant, but was sought to be introduced for the purpose of negativing malice and to show that the killing was not intentional. The verdict on the trial for murder was guilty of involuntary manslaughter in the commission of an unlawful act without intent to kill. The verdict was the equivalent of finding the defendant not guilty of murder, and thus found that there was no malice. This verdict also acquitted the defendant of voluntary manslaughter, and thus found that there was no intent to kill the deceased. Hence, the ruling out of the testimony over the reasons urged in objection by the defendant, if error, was harmless error because the jury found in the defendant's favor on the issues he was seeking to support by the answer which was ruled out. *Jordan v. State*, 22 *Ga.* 545, 546 (9); *Goldsmith v. State*, 54 *Ga. App.* 268, 272 (187 S. E. 694). This ground is not meritorious.

During the testimony of Chief of Police Cross the court admitted the following evidence over the objection of the defendant then and there made: "I saw Mrs. Perry there in the house, and John D. Perry [the defendant], Mrs. Perry, and I were all there in the same room at one time. Mrs. Perry made

a statement to me there in the presence of Mr. Perry. At that time Mr. Perry was about five feet distant from Mrs. Perry and me. As to whether that statement was made loud enough for Mr. Perry to have heard it—well, I didn't see anything that would have kept him from hearing it. I don't know whether he heard it or not. She said he came to the house and got the gun out of the drawer, and she attempted to get it away from him and failed to do it, and that he had done that on previous occasions. Mr. Perry did not make any denial of that." In special ground 2 it is shown that, to the entire portion of the witness's testimony as to Mrs. Perry's statement in the presence of Mr. Perry, the defendant objected that the evidence was not a part of the res gestæ, and that this was testimony of the wife against the husband and she was incompetent so to testify in a criminal case except where the statement was a part of the res gestæ, or where the statement was made under such circumstances that the husband, the defendant, "would be bound to answer," and that it was not shown that the defendant heard the statement against his interest.

We think that the court could have properly admitted the evidence under the rule that "acquiescence or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission." Code, § 38-409. Since it is not the statement of the third person which is admitted as substantive evidence, but only the fact of the accused's failure to deny it, the admissibility of such testimony is in no way affected by the fact that the statement was uttered by the defendant's wife, who is incompetent to testify against her husband as a witness in a criminal prosecution. *Joiner* v. *State,* 119 *Ga.* 315 (1) (46 S. E. 412); *Nunn* v. *State,* 143 *Ga.* 451 (2), 454 (85 S. E. 346); *Dunham* v. *State,* 8 *Ga. App.* 668 (3) (70 S. E. 111). See *Cobb* v. *State,* 27 *Ga.* 648, 696 (4, 5), *Bowen* v. *State,* 36 *Ga. App.* 666, 667 (137 S. E. 793), and also *Knight* v. *State,* 114 *Ga.* 48 (1, 2) (39 S. E. 928, 88 Am. St. R. 17). The question of whether the defendant in fact heard the statement was for the jury (*Knight* v. *State,* supra (2); and if they found under the facts of this case that he did hear it, it would have been a further question for them to determine whether under the circumstances an answer or a denial or other conduct was required, and also whether

his acquiescence or silence under such circumstances amounted to an admission. The admissibility of the evidence was properly determined by the court and the weight which the jury might give to such evidence was left to them. *Smiley* v. *State,* 156 *Ga.* 60 (118 S. E. 713); *Berry* v. *State,* 10 *Ga.* 511, 521.

The defendant also objected to the admission of that portion of the wife's statement in which it was testified that she said, "He had done that on previous occasions," on the ground that this portion of the evidence in regard to happenings in the past was not relevant and was introduced merely for the purpose of prejudicing the jury against the defendant.

We think that the only way in which this testimony could have been harmful to the defendant was in its relationship to a verdict of murder or to a verdict of voluntary manslaughter, as tending to show malice or intent to kill; and the jury having acquitted him of both by their verdict of involuntary manslaughter, it necessarily follows that the admission of the testimony, even if erroneous, was harmless. This ground shows no reversible error.

■ In special ground 3 it appears that the defendant, at the time it was tendered in evidence, objected to the introduction of an ordinance of the City of Thomson which made it a violation of law to shoot fire-arms within the corporate limits of the city without first having obtained the consent of the Mayor. The grounds of the objection were as follows: "This man (defendant) is indicted and is being tried under the laws of the State of Georgia. He isn't being tried under any municipal ordinance at all. When a man is being tried for a statutory offense, certainly they can't bring in the matter of a violation of a city law. He isn't charged with any offense under that law [the city ordinance]; he is charged with murder."

As was stated in the objection to the introduction of the ordinance in evidence, the defendant was being tried for murder under an indictment which alleged, omitting its formal parts, that the defendant on February 4, 1948, with force and arms did unlawfully and with malice aforethought kill and murder one Emmett Dunn Jr., a human being, in the peace of the State, by shooting the said Emmett Dunn Jr. with a pistol and inflicting upon him a mortal wound. Under the allegation of "malice aforethought,"

the State may introduce any evidence which is relevant and material upon the issue of malice, either express (the deliberate intention unlawfully to take away the life of a fellow creature manifested by external circumstances capable of proof) or implied (where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart) ; and it is unnecessary for the indictment to allege more specifically the facts which will be relied upon to establish malice. A deliberate violation of the law, whether of statute or of such ordinance as is here involved, is a fact which may be relied upon to aid in establishing malice. While the violation of the law in itself is insufficient to supply malice unless it be a felony, if—considered in connection with all the surrounding facts and circumstances—it is such an unlawful act as naturally tends to destroy human life, it may be relied upon as a fact tending to show an abandoned and malignant heart, and malice. *Payne* v. *State,* 74 *Ga. App.* 646 (1), 651 (1) (40 S. E. 2d, 759), and cit.

A municipal ordinance is regarded in the courts of this State as a fact susceptible of proof as is any other fact. While the courts of Georgia do not take judicial notice of the existence of such facts, the members of the public are held to know the law of a municipality just as they are held to know the law of the State, and the fact of the ordinance may be introduced in evidence as one of the facts tending (if in fact it does so tend) to prove malice essential to murder, just as any other fact which tends to prove malice may be introduced in evidence under a murder indictment alleging that a killing occurred with "malice aforethought." The objection urged and above quoted was not meritorious.

The defendant further objected to the introduction of the ordinance on the ground that "it must be shown that the ordinance was duly and properly adopted. It isn't sufficient to show that it appears in the ordinance book of the City of Thomson."

The certificate of the City Clerk of Thomson to the ordinance was as follows: "I, C. H. Moore, do hereby certify that I am Clerk of the City of Thomson, and keeper of the records of said municipality and as such do certify that the foregoing is a true and correct copy of an ordinance adopted the 28th day of March, 1917, by the Mayor and Council of the Town of Thomson and

the Town of Thomson as the same appears recorded in Book of the Minutes of the meetings of the Mayor and Council of Thomson, Georgia, beginning September 28, 1914, on page 74 of said book. I further certify that said ordinance is still of force and effect. Witness my hand and seal of the City of Thomson, this the 28th day of February, 1948." The certificate was signed and sealed.

Code § 38-606 provides: "Exemplifications of the records and minutes of municipal corporations of this State, when certified by the clerks or keepers of such records, under seal, shall be admitted in evidence under the same rules and regulations as exemplifications of the records of the courts of record of this State." The ordinance was properly admitted by the court over the objection urged. *Western & Atlantic R. Co.* v. *Hix,* 104 *Ga.* 11, 12 (30 S. E. 424); *Nashville, Chattanooga & St. L. Ry.* v. *Peavler,* 134 *Ga.* 618 (68 S. E. 432). A different question would be presented if the ordinance was sought to be proved by a certified copy taken from a pamphlet or book, called a code of city ordinances, where such codification was not itself adopted by an ordinance. *Western & Atlantic R.* v. *Peterson,* 168 *Ga.* 259, 265 (147 S. E. 513). This ground is not meritorious.

■ It is contended that on an indictment charging murder one can not be convicted of involuntary manslaughter in the commission of an unlawful act, the act being a violation of a city ordinance; and that, if a person is to be charged with involuntary manslaughter in the commission of an unlawful act in the violation of a city ordinance, such charge must be specifically contained in the indictment as in the case of *Hayes* v. *State,* 11 *Ga. App.* 371 (75 S. E. 523).

Under the provisions of our Code, § 26-1001 et seq., murder and manslaughter, both voluntary and involuntary, are grades of unlawful homicide. *Teal* v. *State,* 22 *Ga.* 75 (68 Am. D. 482); *Davis* v. *State,* 14 *Ga. App.* 764, 766 (1) (82 S. E. 297). "Murder is the unlawful killing of a human being, in the peace of the State, by a person of sound memory and discretion, with malice aforethought, either express or implied." Code, § 26-1002. "Manslaughter is the unlawful killing of a human creature, without malice, either express or implied, and without any mixture of deliberation whatever, which may be voluntary, upon a sudden

heat of passion, or involuntary, in the commission of an unlawful act, or a lawful act without due caution and circumspection." § 26-1006. "It has always been held that upon an indictment charging murder a conviction for manslaughter was proper. In other words, when an indictment charges murder it also charges manslaughter. . . Under the criminal practice and procedure in this State there is no doubt but that a verdict of involuntary manslaughter would find support in such a pleading. This is so because involuntary manslaughter is the 'unlawful killing of a human being,' and such crime is always included in an indictment for murder." People v. Pearne, 118 Cal. 154 (50 Pac. 376).

We have no common-law crimes in Georgia; however, our legislative assembly has denounced as crimes many of the offenses known to the common law. Under the common law manslaughter was regarded as a degree of homicide; and a defendant charged with murder could be convicted of either voluntary or involuntary manslaughter. See State v. Trent, 122 Ore. 444 (252 Pac. 975). And in Georgia it is held that under an indictment for murder the jury may find the prisoner guilty of the lesser offense of manslaughter, either voluntary or involuntary, and the verdict will be legal, although there is no count for manslaughter in the indictment. Reynolds v. State, 1 Ga. 222. See also People v. Darrow, 212 Cal. 167 (298 Pac. 1).

In Haynes v. State, 11 Ga. App. 371, 375 (75 S. E. 523), it was held: "An unlawful act within the meaning of our statute [defining involuntary manslaughter] is an act prohibited by law, that is to say an act condemned by some statute or valid municipal ordinance of this State." It has also been held that a charge of involuntary manslaughter in the commission of an unlawful act can be based upon an act malum prohibitum as well as upon an act malum in se. Silver v. State, 13 Ga. App. 722 (4) (79 S. E. 919).

The indictment here was in the usual form charging murder in general terms. It charged distinctly that the defendant unlawfully killed the deceased by shooting him with a pistol. The indictment having been laid for murder and charging that the mortal wound was inflicted by shooting the deceased with a pistol, and the proof being that this was the manner in which the deceased was killed, under our criminal practice and procedure

a verdict of involuntary manslaughter would find support in the pleading; and this is true for the reason that involuntary manslaughter is the unlawful killing of a human being, and such crime is always included in an indictment for murder—that is, the indictment necessarily included within itself all the essential ingredients of involuntary manslaughter in the commission of an unlawful act. See *Reams* v. *State*, 24 *Ga. App.* 135(1a) (100 S. E. 230). A conviction of a lower grade of unlawful homicide —involuntary manslaughter in the commission of an unlawful act—may be had under an indictment for a higher grade of unlawful homicide—murder—both murder and manslaughter being different grades of the same offense—unlawful homicide. Such a case is differentiated from one in which the defendant is convicted of a lesser, but different, crime under an indictment charging a higher offense, which lesser offense, not necessarily a part of the higher offense, must be shown in the indictment, as is discussed in *Goldin* v. *State*, 104 *Ga.* 549 (30 S. E. 749), and in *Watson* v. *State*, 116 *Ga.* 607 (43 S. E. 32, 21 L. R. A. (N. S.) 1). See also *Kimball* v. *State*, 63 *Ga. App.* 189 (10 S. E. 2d, 240).

It follows that the defendant has been convicted of an offense with which he was charged, that is, the offense of involuntary manslaughter in the commission of an unlawful act; and the verdict was not contrary to law if it was authorized by the evidence.

■ During the trial of the defendant Perry, the State introduced a city ordinance, the second section of which was as follows: "Be it further ordained by the authority aforesaid that any person who shall fire any gun, pistol, or other firearms, within the corporate limits of the Town of Thomson, without first obtaining the consent of the Mayor, shall, on conviction, pay a fine not exceeding $50, sentence to confinement in the calaboose of the Town of Thomson, not more than 30 days, or sentenced to work upon the streets of the Town of Thomson for not exceeding thirty days, one or all of said penalties in the discretion of the Mayor."

John Marion Dunn, the brother of the deceased, testified in part: "We both had started to school that morning. We had to pass Mr. John D. Perry's home on our way to school. Before we got to Mr. Perry's home I heard something; just as we were

approaching in front of his house we heard a shot. I didn't know what he was shooting at, but it sounded as if it was a fire-cracker. That was just as we were approaching in front of his house. And as we got even with his house and passed his house I saw Mr. Perry; he was sitting on the side steps of his house, and he had a pistol in his hand. . . Well, I don't know whether I heard the other shot, or whether it was my brother hollered, but I know I heard him holler. And after he fell he said, 'Go and tell Daddy there's a man shot me'." Evidence, to the fact that the defendant had worked all night the night previously, and that he was intoxicated and had been urged to go home by Earl Lokey, Mayor of Thomson, at about eight o'clock in the morning previous to the killing, which occurred before nine o'clock, was introduced. The mayor also testified that the defendant did go home when encouraged to do so, and that he, as mayor, had not given permission to the defendant to fire a pistol within the city limits of Thomson. The evidence was somewhat conflicting as to how clearly or as to how much of the deceased's and his brother's persons the defendant could have seen from the point at which he sat on his steps and fired his pistol as they walked along the street.

The defendant stated to the jury: "Well, I was up that night, . . and I met up with Mr. Lokey and he and I had a conversation. He talked to me and told me that I was drinking a little and to go on home. Well, I . . got in my car and went on to the house. When I got to the house, . . I went in there to look in the dresser drawer to get a pocket handkerchief. That is where I kept my pocket handkerchiefs where the gun was at. I seen the gun. . . I hadn't cleaned it up [in about a year]. . . So I got it out and got a little rag and went out there and set down on my back doorsteps and oiled it a little and wiped it out and fired it once or twice [at a stump]. . . I raised it and fired again at this little stump sitting out there in front of my house, and I just didn't see them; I didn't see anybody, until I heard this boy with his brother make some kind of a fuss out there, and I didn't realize then that I had hit anybody. . . And then my wife came to the door . . and she hollered and told me that I had hit him. . . God knows I didn't intend to hurt anybody. . . If I had seen those boys, I wouldn't have

fired a gun in that direction, and I didn't think when I sat down there that there was anybody across that field; and I don't guess there is a house in that direction in a quarter of a mile." There was also evidence that the place at which the deceased was shot was in the City of Thomson.

This evidence and the defendant's statement authorized the jury to find that the defendant was firing a pistol within the city limits of Thomson, contrary to the laws thereof, and in so doing shot and killed Emmett Dunn Jr., but that in so doing he was not engaging in the commission of an unlawful act which naturally tends to destroy the life of a human being, because he shot in a direction in which there were no houses nearby and because he did not see the boys walking along the street; and, hence, the jury were authorized to find the defendant guilty of involuntary manslaughter in killing the deceased while engaged in the commission of an unlawful act without intent to kill.

The evidence authorized the verdict, and the trial court did not err in overruling the motion for a new trial.

*Judgment affirmed.* *Gardner and Townsend, JJ., concur.*