## 34698. EMMETT v. THE STATE.

HALL, Justice.

Emmett appeals his July, 1978 conviction and life sentence for the 1973 murder of his wife.

Emmett worked the 4:00 p.m. to midnight shift at a mill, and lived with Wynelle, his wife of 12 years, and their young son Michael. The state's evidence tended to show that on the night of August 20-21, 1973, Mrs. Ayers, Wynelle's half-sister, received three telephone calls from Emmett, beginning at approximately 12:35 a.m. He stated in the first call that Wynelle was sick, he could not

wake her and he found blood on her pillow. He asked Mrs. Ayers to summon an ambulance. In the second call he stated he had found a screen door cut and his gun missing, and it appeared someone had broken in. The third call reported that the ambulance had arrived and Wynelle was dead. When the sheriff arrived Emmett reported to him that someone had broken into the house and killed his wife.

The house was in good order except that the victim's underpants were lying at the foot of her bed, the missing .22 calibre rifle was under her bed, and some wet paper towels lay on the kitchen floor. The screen door appeared to have been cut from the *inside*. A spent .22 calibre cartridge shell was found on the floor. The cause of death was a single gunshot wound to the back of the head. The victim was found lying on her back in bed, with her hair in curlers, her nightgown pulled up chest high, naked from the waist down, with legs spread apart. The medical evidence indicated fairly recent sexual intercourse though the time could not be fixed.

The medical evidence showed that death probably occurred between 11:00 p.m. and 12:00 midnight, August 20. Emmett testified that he left the mill at 12:04 a.m. (August 21) after his work shift and arrived home at 12:25 a.m. He drove a white Chevrolet pick-up truck, which was at the home when officers arrived. Patrolman Hulsey testified that earlier in the evening he had seen a white Chevrolet pick-up proceeding toward Emmett's house at 11:40 or 11:45 p.m. that evening, though upon sighting the officers the driver of the pick-up changed directions.

Emmett was arrested for the murder. Detective Carter testified that while Emmett was in custody, he told Carter that he had been feeling frustrated because of his wife's refusal of or interruption of sexual relations, and that "he did not know if he killed her or not, but did not think he did."

The grand jury failed to indict Emmett, and he resumed living with his son Michael, 5 years old. For a time they resided at the home of Mrs. Bruce. Mrs. Bruce testified that once as Emmett left the house, he told Mrs. Bruce and her former husband to question Michael as to who killed his mother. When Emmett returned he asked

Michael if he had told them who killed his mother, and in the presence of Mrs. Bruce and Mr. Armour, Michael replied that he had not; that Emmett should tell them because he (Emmett) had killed her. Mrs. Bruce testified that Emmett made no response in her hearing, but that she felt upset and left the room soon after. Mr. Armour also testified to this conversation, and said that Emmett "didn't say nothing . . . He just smiled sort of."

Emmett testified that Michael had begun to show mental disturbances after Emmett was released from jail, and had been placed under psychiatric care. Mr. Armour testified that he disbelieved Michael "because he was little and his mind ain't right."

1. Emmett alleged error in the trial court's admitting testimony concerning the conversation with Michael. The evidence was admitted under Code Ann. § 38-409: "Acquiescence or silence, when the circumstances require an answer or denial or other conduct, may amount to an admission." Emmett argues that since the issue is whether a response by him was necessitated by the child's comment, there should have been some preliminary determination of Michael's competency. He argues that his confrontation rights were denied.

Emmett's arguments are not persuasive. The competence of the child as a witness is not involved, because the child was not a witness. What is admitted as evidence is not the child's accusation but the failure of Emmett to respond. Cf. *Perry v. State,* 78 Ga. App. 273, 275 (50 SE2d 709) (1948) (husband's silence upon wife's question admissible, though she was not competent to testify against him.) Further, it is for the jury to decide whether under the circumstances, including the child's youth and possible psychiatric difficulties, any answer or denial or other conduct was required, and whether silence in those circumstances amounted to an admission. *Byrd v. State,* 78 Ga. App. 824, 831 (52 SE2d 330) (1949); *Perry,* supra, 78 Ga. App. at 275-276.

We[1] think it important to reconcile this decision with our recent cases considering Doyle v. Ohio, 426 U.S. 610 (1976).

_____

[1]Emmett himself does not inject Doyle (infra) into

It has long been Georgia law that an accused who is taken into custody cannot be presumed to acknowledge guilt just because he does not deny the charges. *Howard v. State,* 237 Ga. 471 (228 SE2d 860) (1976); *Rosborough v. State,* 209 Ga. 362 (72 SE2d 717) (1952); *Graham v. State,* 118 Ga. 807 (45 SE 616) (1903); *Johnson v. State,* 151 Ga. 21, 25 (105 SE 603) (1921). This was also the thrust of Doyle. As we implicitly recognized in our recent decision in *Howard v. State,* supra, the rationale of Doyle is that "every post-arrest silence is insolubly ambiguous. . ." 426 U. S. at 617. See also Id., n. 8. Accordingly, we were careful in *Howard* to phrase the ruling this way: ". . . in view of Miranda, police interrogation is not such a circumstance as requires an answer or denial so as to authorize charging Code § 38-409 in a criminal case." 237 Ga. at 475. *Howard* overruled Division 2 of *Bennett v. State,* 231 Ga. 458 (202 SE2d 99) (1973), which was in fact a police interrogation case.

But we do not have here a case of post-arrest silence or police interrogation, with which Doyle and *Howard* dealt exclusively. Instead, this is "silence by a person not in custody accused of a crime by a citizen." *Howard,* supra, 237 Ga. at 474, n. 2, which we have recognized as presenting a totally different situation. Id. The rationale of Doyle and *Howard* are totally inapplicable here.

Though we have not directly confronted this question after Doyle, other courts have. We rule that the trial court did not err in admitting this testimony. *Bloodworth v. State,* 216 Ga. 572, 573 (118 SE2d 374) (1961). Accord, State v. Calhoun, 115 Ariz. App. 115 (563 P2d 914, 917) (1977); State v. Osborne, 50 Ohio St. 2d 211 (364 NE2d 216) (1977), *death sentence vacated and remanded under* Lockett v. Ohio (438 U. S.—, 57 LE2d 973), 57 LE2d 1157 (1978). Cf., Lofton v. State, 83 Wis. 2d 472 (266 NW2d 576, 582) (1978).

---

this appeal at all. He phrases the issue as follows in his brief: "The question in the subject case is whether a response by Appellant was necessitated by a child's comment . . . Appellant deserved some determination as to the competency of the declarant."

2. The trial court did not err in admitting into evidence over objection State's Exhibits 2 and 3, which were photographs of the victim's body exactly as she was found after death. *Godfrey v. State,* 243 Ga. 302 (1979); *Edwards v. State,* 233 Ga. 625 (212 SE2d 802) (1975). The photographs were relevant to the issues in the case, including motive.

3. At some time between the 1973 murder and the 1978 trial, most items of physical evidence, including the alleged murder weapon and the victim's nightgown, were lost and accordingly could not be produced by the state in response to Emmett's motion to produce. Emmett makes no contention that the prosecutor failed to make a good faith effort to produce the items. Emmett was given access to the reports of the State Crime Lab. concerning the items and talked to the witnesses who had conducted tests upon them.

At the hearing on his motion, he argued in effect that the state could not try him for this crime without producing the actual items of physical evidence, because under *Patterson v. State,* 238 Ga. 204 (232 SE2d 233) (1977) he was entitled to have persons of his own choosing examine the evidence in order properly to prepare his defense. He makes, however, no claim that any of these items could exculpate him.

In *Patterson,* a drug case, we wrote that "Where the defendant's conviction or acquittal is dependent upon the identification of the substance as contraband, due process of law requires that analysis of the substance not be left completely within the province of the state. [Cits.] Of course, the defendant does not have an absolute, unqualified right to examine such evidence." 238 Ga. at 206. We have subsequently ruled that *Patterson* does not apply to criminal evidence generally. *Moore v. State,* 240 Ga. 807, 814 (243 SE2d 1) (1978). Thus, the case cited by Emmett does not support him and no error has been shown in the trial court's ruling that trial could proceed without these items of physical evidence. See *Partain v. State,* 238 Ga. 207 (232 SE2d 46) (1976).

Review of the transcript shows that Emmett subsequently waived his initial request for a continuance on this point.

4. The trial court did not abuse its discretion in refusing to order a mistrial following a prosecutor's question to Emmett, "Where is your present wife." Emmett argues that there was community publicity concerning the disappearance of this wife and that the prosecutor's question was designed to prejudice the jury against him. The record contains no evidence on this point, and Emmett's bare assertion is too theoretical and remote to carry his burden of showing that he could not receive a fair trial following the prosecutor's question.

5. In his seventh enumeration of error, Emmett complains of testimony concerning his character in the community. After Emmett placed his character in issue (see Code Ann. § 38-202), Mrs. Bruce, who had testified that she would believe him under oath, was asked by the state, "What have you heard about he and his wife getting along?" She answered, "His wife was scared of him." Emmett's objection at trial was limited to an assertion that the evidence was hearsay.

The objection was not good. Such reputation evidence is acknowledged to be hearsay and is nonetheless admissible. Once Emmett opened the door for character evidence, the state had the right to use specific matters to test the foundation and extent of the witness' knowledge. The trial court did not err in overruling the objection. *Brown v. State,* 237 Ga. 467, 468 (228 SE2d 853) (1976); *Franklin v. State,* 230 Ga. 291, 292 (196 SE2d 845) (1973).

6. Under Code Ann. § 110-109 "it has been repeatedly held that the affidavit of a juror will not be received to show that the jurors in arriving at their verdict acted upon private knowledge or upon matters which were not in evidence." *Alley v. State,* 99 Ga. App. 322, 323 (108 SE2d 282) (1958). Accord, *Estes v. Carter,* 105 Ga. 495 (30 SE 882) (1897). Accordingly, there is no merit in Emmett's first enumeration of error which urges that the trial court erred in overruling his new trial motion to which was attached an affidavit of one of the jurors to the effect that during the deliberations, one of the jurors commented that "this was the guy whose last wife and child had disappeared and the law officers had not found the bodies," and another one then said "this knowledge

with the evidence presented makes it appear that he is the type who would do it." See *Aguilar v. State,* 240 Ga. 830, 831-832 (242 SE2d 620) (1978). Emmett's sole authority for his position here is *Watkins v. State,* 237 Ga. 678 (229 SE2d 465) (1976) which is not applicable here for the reason stated in *Aguilar v. State,* supra, 240 Ga. at 832.

7. Emmett next argues that at least one of the jurors must have lied upon voir dire, because otherwise there would have been no one on the jury who could have made the above comment. This is said to follow from the fact that defense counsel asked each juror if he knew anything about the case.

From the voir dire transcript we find that defense counsel asked no question which called upon the jurors to state whether they had read or heard anything concerning the disappearance of Emmett's latest wife. Her disappearance is not a fact about *this* case, which was the phraseology employed at voir dire. *This* case occurred five years previously. The enumeration of error is without merit.

8. The record supports the trial court's determination that Emmett's statement to Detective Carter was shown to be voluntary by a preponderance of the evidence. See *High v. State,* 233 Ga. 153 (210 SE2d 673) (1974). Assuming without deciding that counsel had already been appointed for Emmett prior to his making the statement and that police knew this fact, that would not alone make his statement inadmissible. We have previously refused to adopt such a rule. *Pierce v. State,* 235 Ga. 237, 239 (219 SE2d 158) (1975). *Smith v. State,* 132 Ga. App. 491 (208 SE2d 351) (1974), cited by Emmett is factually inapposite.

9. There was adequate evidence to support the conviction.

*Judgment affirmed. All the Justices concur, except Jordan, J., who dissents as to Division 6 and the judgment.*

SUBMITTED MARCH 14, 1979 — DECIDED APRIL 5, 1979 — REHEARING DENIED APRIL 24, 1979.

*W. Allan Myers,* for appellant.
*Jeff C. Wayne, District Attorney, Arthur K. Bolton,*

*Attorney General, Nicholas G. Dumich, Staff Assistant Attorney General,* for appellee.