## 57852. MARTIN v. THE STATE.

CARLEY, Judge.

Appellant was indicted and tried for aggravated assault and rape. From his conviction of both offenses he brings this appeal.

1. Appellant urges that aggravated assault is a lesser included offense in the crime of rape and that his conviction for both cannot stand. Code Ann. § 26-1302 provides: "A person commits aggravated assault when he assaults (a) with intent to murder, to rape, or to rob, or (b) with a deadly weapon." The state's evidence showed that the victim was attacked with a tire jack. From evidence presented as to the manner in which the jack was used to

assault the victim, the jury was authorized to find that it was a deadly weapon within the meaning of Code Ann. § 26-1302 (b). *Quarles v. State,* 130 Ga. App. 756 (2) (204 SE2d 467) (1974); *Ellis v. State,* 137 Ga. App. 834, 836 (2) (224 SE2d 799) (1976). The evidence also showed that the victim was then forced into her automobile, where the rape was committed.

This evidence shows the commission of aggravated assault and of rape. Since the former crime was not a lesser included offense of the latter (*Hughes v. State,* 239 Ga. 393, 397 (3) (236 SE2d 829) (1977)), there was no error.

2. Appellant's allegations that error was committed because the bailiff was not properly sworn are unsupported by the record, it affirmatively appearing that the bailiff took charge of the jury only after his oath had been administered. There was no error. Compare *Hannah v. State,* 212 Ga. 313, 319 (6) (92 SE2d 89) (1956).

3. Appellant urges that it was error to allow a witness for the state to remain in the courtroom after the rule of sequestration had been invoked and after other witnesses had taken the stand and testified. It is urged that the state presented no reason why this witness should not have been called first and that it was an abuse of discretion for the court to permit this sequence of testimony without such a showing. *Whitfield v. State,* 143 Ga. App. 779 (2) (240 SE2d 189) (1977).

The witness in question was the GBI agent who conducted the investigation of the alleged crime and was listed as the prosecutor on the indictment for rape. We do not agree with appellant's assertion that the state presented no reason why this witness should not have testified first. The record reveals the following colloquy occurred with regard to this witness and his testimony:

"District Attorney: Your Honor, the State will request Agent Sikes be allowed to remain in the courtroom. I need his assistance in the trial of the case. He is the Prosecutor.

"The Court: All right. What do you wish to say in response?

"Appellant's counsel: I assume that he will be allowed to testify first.

"District Attorney: *No, not necessarily. We will*

*present the case in the order in which the events occurred.* I think the discretion of the Court will allow him . . ." (Emphasis supplied.)

"The witness involved was the chief investigating officer. He was familiar with the case and the prosecutor stated in his place that he needed the witness' assistance during the trial. In response to appellant's motion to require the investigating officer to testify as the first witness in the case, the prosecutor stated that *the testimony would be out of order if this witness was required to testify first." Davis v. State,* 242 Ga. 901, 903 (242 SE 2d 443) (1979). (Emphasis supplied.) In the instant case as in *Davis,* supra, the district attorney stated that his reason for not calling the witness first was the orderly presentation of the evidence. Therefore, we conclude that "a proper foundation for an exception to the sequestration rule was made and, . . . we find no abuse of discretion by the trial judge in allowing the investigating officer to remain in the courtroom and in refusing to direct that he be called as the state's first witness." *Davis v. State,* supra, 904.

4. On cross examination of the investigating officer, appellant's counsel sought to elicit answers to questions concerning the victim's statements made to the officer during the course of his investigation. The state objected and, outside the presence of the jury, appellant's counsel stated that he wished to use the witness' answers to impeach the victim's testimony, by establishing that she had omitted to report to the witness all of the circumstances of the crime to which she had testified in court. The court sustained the objection and prohibited inquiry into the victim's prior statements to the witness.

Code Ann. § 38-1803 provides, inter alia: "A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case." We need not decide if a prior statement may be "contradictory" because it merely *omits* details which are subsequently testified to since the trial scenario revealed by the transcript shows that, here, the court correctly excluded the testimony sought to be elicited for the purposes of impeaching the victim, an earlier witness. Code Ann. § 38-1803 further provides:

"Before contradictory statements may be proved against him . . . the time, place, person and circumstances attending the former statement shall be called to his mind with as much certainty as possible. . ." No such foundation was laid by appellant's counsel when the victim was testifying. *Smith v. Payne,* 85 Ga. App. 693, 700 (70 SE2d 163) (1952). There was no error.

5. The state called as one of its witnesses the Director of the Savannah Branch Crime Lab, who was duly qualified as an expert witness in the field of chemical analysis. During the course of direct examination this witness was questioned concerning his examination of certain items of evidence obtained from the victim on the night of the alleged crime. The witness testified that his examination of various slides revealed the presence of "complete or intact sperms." He was then asked: "From your experience in cases that you've examined how long would a sperm stay intact like that?" Over appellant's objection, the witness was allowed to testify that ". . . over the past three years I have kept records on those cases where the information was available, the alledged [sic] time of incidents and the time of examination, at the time in which the slides were prepared. And I use the number of fourteen hours as the time period at which I would not expect to find spermatazoa, at which I have never found spermatazoa in any of the cases that I have a record of the time period."

It is urged on appeal that it was error to allow this opinion testimony into evidence. We do not agree. "The opinions of experts, on any question of science, skill, trade or like questions, shall always be admissible . . ." Code Ann. § 38-1710. The witness had personally examined the slides in question and had conducted chemical tests and analysis on them. " 'The opinion of an expert on any question relating to his profession, trade, or business is always admissible, . . . where, as here, the expert has himself observed the facts and gives his opinion based upon his own observation. [Cits.]' " *Bullington v. Chandler,* 110 Ga. App. 803, 804 (140 SE2d 59) (1964). "[A]n expert witness can express his opinion . . . upon proof being made that he was in a position to form an expert opinion, without the necessity of stating the facts

forming the basis of his conclusion. [Cits.]" *Morgan v. Bell,* 189 Ga. 432, 437 (5 SE2d 897) (1939). However, the fact that the expert witness *did* relate the basis for his conclusion that the evidence was no more than fourteen hours old — comparison of the results with prior analyses — did not render erroneous the allowance of the expert opinion testimony. Cf. *Finley v. Franklin Aluminum Co.,* 132 Ga. App. 70, 72 (3) (207 SE2d 543) (1974). "Where the testimony of an expert is competent, he may be permitted to give the details of experiments on which his testimony is based." *Frank v. State,* 141 Ga. 243, 244 (4) (80 SE 1016) (1914). Thus, the testimony was admissible on the basis of his previous experience and personal observation. *Fountain v. State,* 228 Ga. 306, 308 (5) (185 SE2d 62) (1971).

6. Some three weeks before trial and some four months after arrest, appellant filed a motion entitled "Right to Test," seeking an independent test and comparison by his own experts of both his and the victim's clothing and "any other physical evidence which the state acting by and through the District Attorney or his assistant intend or may use upon the trial of said case . . ." This motion was denied.

Citing *Patterson v. State,* 238 Ga. 204 (232 SE2d 233) (1977), appellant urges that denial of this motion was error. We do not agree. In *Patterson,* supra at 206, it was held that "[w]here the defendant's conviction or acquittal is dependent upon the identification of the substance as contraband, due process of law requires that analysis of the substance not be left completely within the province of the state. [Cits.]" In subsequent decisions, this holding has been explicated. In *Moore v. State,* 240 Ga. 807, 814 (243 SE2d 1) (1978), the defendant sought an independent test of "'hair samples, blood samples, saliva samples, footprints, tire tracks, and ballistics tests of rifles and bullets'" — evidence very similar to that which appellant in the instant case now urges (but did not specifically delineate in his "Right to Test" motion) he should have been allowed to test independently of the state. In *Moore,* the Supreme Court viewed the "holding in *Patterson,* as requiring no more than that an opportunity to examine an allegedly improper substance for identification

purposes must be provided in an action for improper possession of narcotics; it merely conceded the right of access to evidence in a case in which the question of the identity of the alleged prohibited substance was determinative of guilt or innocence. *Patterson* has not been extended to cover all evidence in a criminal case . . ." *Moore v. State,* supra. Thus, *Patterson* applies only to possessory offenses and there is a right to independently test only alleged contraband. Accord, *Emmett v. State,* 243 Ga. 550, 554 (3) (255 SE2d 728) (1979).

Furthermore, the record here reveals that an in camera inspection of the state's files was conducted pursuant to appellant's Brady motion. The court found upon that inspection that the state had previously furnished certain items to appellant, including "[c]opies of all crime lab reports, except the lab report dealing with the testing of slides for determining male sperm which the Court finds not to be exculpatory to the Defendant." After reviewing the state's entire file, the trial judge concluded that appellant had received all exculpatory material contained therein. Thus the objective of appellant's Brady motion was met. *Benefield v. State,* 140 Ga. App. 727, 733 (8) (232 SE2d 89) (1976); *Toole v. State,* 146 Ga. App. 305, 306 (5) (246 SE2d 338) (1978). Also, there was compliance with appellant's motion to produce to the extent that the scope thereof was relevant and enforceable. *Stevens v. State,* 242 Ga. 34, 35 (1) (247 SE2d 838) (1978); *Natson v. State,* 242 Ga. 618, 623 (5) (250 SE2d 420) (1978). And, as to the clothing, the only articles specified in appellant's "Right to Test" motion, the record shows that the tests conducted in the state lab were inconclusive and "did not contribute to a solution of the identity of the perpetrator of the rape, as to which there was ample evidence *aliunde* implicating the defendant and none pointing to anyone else." *Griffin v. State,* 148 Ga. App. 311, 312 (251 SE2d 161) (1978).

Therefore, the trial court committed no error in denying appellant's "Right to Test" motion.

7. As a result of a motion by appellant, a preliminary hearing was held some three weeks before trial during which hearing testimony was received from the investigating officer, the victim and the physician who

examined the victim on the night of the alleged crime.

Two days before the trial resulting in his conviction, appellant moved for a continuance contending that "said [preliminary hearing] transcript is essential to the trial of his case for the impeachment of witnesses by the State and for cross examination of witnesses expected to be produced by the State." His motion was denied. At trial, appellant renewed his motion, his counsel stating: ". . . I have communicated again with [the court reporter] and she advises that it's not possible for her to get the transcript of testimony into our hands in time for this trial . . . [W]e need this in order to properly represent the Defendant, to present the testimony previously given for purposes of cross examining a witness and contradictions in the testimony." His motion for a continuance on this ground was again denied.

Appellant urges that it was error to deny his motions for a continuance. The state, citing *Nettles v. State,* 144 Ga. App. 473 (1) (241 SE2d 589) (1978), and *Graham v. State,* 147 Ga. App. 202 (3) (248 SE2d 332) (1978), argues that no error is shown by the refusal to grant a continuance based upon the absence of any record of the committal hearing. Both cases cited by the state merely hold that there is no requirement that an appellant *be furnished* with an abstract of any evidence at a committal hearing or a transcript of the evidence taken in a hearing by a court of inquiry. These decisions do not support a ruling that a continuance is properly denied where, as here, a defendant having arranged for a take-down by a court reporter of the testimony presented at the hearing, specifically bases his motion for a continuance on the absence of the transcript and further presents to the court reasons why it would be important to his defense — cross examination and impeachment of the witnesses to be presented against him. The record before us demonstrates appellant's due diligence in acquiring the transcript and is perfected as to his repeated motions that the trial be continued so as to allow completion of the transcript. Therefore, denial of his motions was error requiring reversal of the conviction and a new trial. *Coaxum v. State,* 146 Ga. App. 370, 371 (4) (246 SE2d 403) (1978).

8. The record reveals that when the physician who

had examined the victim was called as a witness for the state and had testified on direct and on cross, appellant requested that he "remain on call . . . because we expect some documentation to come in from the Court Reporter." The witness was then released subject to recall. Thereafter, at the very end of the trial the court reporter arrived with a draft copy of the transcript of the preliminary hearing. Outside the presence of the jury, the draft transcript was reviewed for inconsistencies between the physician's preliminary hearing testimony and his testimony at trial and certain statements made by the physician at the preliminary hearing were read to the jury. Appellant then sought to recall the physician for cross examination. He was not allowed to put the witness on cross but was required to call him as his own witness. During the course of examination the state made several objections to questions asked of the witness on the ground that appellant was trying to impeach his own witness. These objections — which clearly would have been without merit if interposed to questions propounded on cross examination — were sustained.

While, on these facts, it was not error to refuse to admit the entire transcript of the hearing for impeachment purposes ( *Williams v. Chapman,* 7 Ga. 467 (1849)), we are constrained to hold that appellant was not afforded his right to a "thorough and sifting" cross examination. While it is true that "[t]he trial court may, after a witness has left the stand, allow him [to be] recalled, and in [its] discretion may require the side so recalling the witness to adopt him as its own" ( *Iler v. State,* 139 Ga. App. 743 (2) (229 SE2d 543) (1976)), we find no cases in which the defendant in a criminal case has been denied the right to recall a state's witness for cross examination where motions for continuance based upon grounds involving the exercise of this right have been made and erroneously denied and a specific request has been made that the witness be subject to the defendant's recall. Even though this witness had previously been subjected to cross examination, appellant's request for a continuance until the transcript of the preliminary hearing was completed so that he might prepare for this examination had been denied. When appellant was forced

to cross examine without benefit of this transcript, he specifically requested that the witness be on recall "because we expect some documentation to come in from the Court Reporter." Therefore, we refuse to hold that this prior opportunity afforded the appellant to cross examine the witness was as "thorough and sifting" as that contemplated by § 38-1705. Compare *State Farm Mut. Auto. Ins. Co. v. Rogers,* 105 Ga. App. 778, 782 (3) (125 SE2d 893) (1962). And when the witness was "recalled," testimony that would have been admissible if the witness had been on cross was excluded when the state objected that appellant was attempting to impeach his own witness. The trial court had the discretion to allow appellant to recall this witness for cross examination. *Cothran v. Forsyth,* 68 Ga. 560 (1882); *Eberhart v. State,* 121 Ga. App. 663, 664 (3) (175 SE2d 73) (1970). Under the circumstances existing in this case, it was an abuse of discretion for the court not to do so.

9. Appellant urges that it was error to deny his motion to proceed in forma pauperis. We agree. Code Ann. § 24-3413 provides, in part: "When any party . . . shall be unable to pay any deposit, fee or other cost which may normally be required in such court, if such party shall subscribe an affidavit to the effect that from poverty he is unable to pay these costs, such party shall be relieved from paying such costs and his rights shall be the same as if he had paid such costs. Any other party at interest, or his agent or attorney, may contest the truth of such pauper's affidavit by verifying affirmatively under oath that the same is untrue. *The issue thereby formed* shall be heard and determined by the court under the rules of the court. The judgment of the court on all issues of fact concerning the ability of a party to pay costs or give bond shall be final." (Emphasis supplied.) The record before us contains appellant's motion to proceed in forma pauperis and his pauper's affidavit; it does not contain any traverse affidavit, as required by law, contesting the truth of appellant's affidavit. All that appears, other than appellant's affidavit, is the trial court's order denying the motion. Compare *Whitus v. Caldwell,* 229 Ga. 604 (193 SE2d 613) (1972). It is thus clear that in the absence of a traverse affidavit "no issue was thereby formed" and

there were no issues of fact concerning appellant's ability to pay; it was error to deny his motion. "*Where a pauper's affidavit is successfully traversed* the appellant should be required to pay the court costs and provide such supersedeas bond as is appropriate to the circumstances." *Spaulding v. Rich's, Inc.*, 144 Ga. App. 467, 469 (241 SE2d 584) (1978). (Emphasis supplied.) Cf. *Ferry v. State*, 147 Ga. App. 642 (1) (249 SE2d 692) (1978). *When a traverse is filed*, the issues are formed and then and only then is the judgment of the court on those issues final. Cf. *Williams v. State*, 147 Ga. 632 (249 SE2d 694) (1978).

The state urges that this issue is moot because this appeal has been taken and a full transcript of record and of the testimony has been transmitted to this court. *McCrary v. State*, 229 Ga. 733, 736 (8) (194 SE2d 480) (1972). *McCrary* does not discuss the traverse affidavit requirement of Code Ann. § 24-3413 but, rather deals with Code Ann. § 27-3002 and an indigent party's right to appeal his capital felony conviction — a right which is not premised on the submission of affidavits and resolution of the issues of fact raised thereby. *McCrary* is not authority for holding the denial of a motion made under Code Ann. § 24-3413, the applicable Code section in the instant case, to be moot because the record and transcript is before the court on appeal. In *Clay v. State*, 122 Ga. App. 677 (178 SE2d 331) (1970), this court referred to the procedure provided by Code Ann. § 24-3413 to challenge the pauper's affidavit in a case where the defendant had, at his expense, furnished the transcript on appeal. In *Clay*, we ordered that upon remand the cost of the transcript be refunded. Here, also, it was error, in the absence of a traverse affidavit, to deny appellant's motion to proceed in forma pauperis. However, in *Clay* the conviction was affirmed with direction; since we are reversing the appellant's conviction on other grounds, a new trial will be required and we leave to the trial court the handling of further proceedings in a manner not inconsistent with this opinion.

*Judgment reversed. Deen, C. J., and Shulman, J., concur.*

ARGUED MAY 8, 1979 — DECIDED JULY 16, 1979 —

*Richard D. Phillips,* for appellant.
*DuPont K. Cheney, District Attorney, Kenneth R. Carswell, Assistant District Attorney,* for appellee.