## 36552. CHAFIN v. THE STATE.

HILL, Justice.

Joseph Byron Chafin was indicted for malice murder and armed robbery of Norman Pitts, the night clerk at the Oak Park Inn in Brunswick. He was tried by a jury, convicted on both counts, and sentenced to life imprisonment for the murder and twenty years imprisonment for the armed robbery, the sentences to run consecutively.

Jackie Beaver testified at length as to his and the defendant's activities on the night of the crime. He stated that he and the defendant were at the Cushion & Cue Bar in Brunswick, Georgia, on the evening of February 25, 1978. They left with friends and went to the Oak Park Inn where they "shot up some dope." Beaver described the dope as MDA, a combination of heroin, cocaine, and speed.

When they arrived at the Oak Park Inn, Beaver took his gun, a .38 Rossi revolver, inside with him. The defendant asked for it and

Beaver gave it to him. The defendant and Beaver then left together and made the rounds of several bars including the Cushion & Cue and the Chances R, following which they stopped briefly at a party at Richard Johnson's house. They left the party to get something to drink, but en route they agreed to "do a job" and returned to the Oak Park Inn. The defendant told Beaver the robbery victim would have to be killed to avoid having any witnesses. Beaver, who was driving, pulled into the Inn and the defendant went into the office, fatally shot the night manager in the head, and took the cash box. They then returned to the Johnson party, where the defendant gave a man named Peaches money to provide an alibi. They then left again with Peaches and his girl friend. After leaving Peaches and the girl at her house, they drove out Canal Road past the airport where the defendant opened the cash box, removed the money, and threw the box in the woods. They then drove to the Ramada Inn and rented a room; the defendant registered but told Beaver that he used James Wooten's name. Since having committed the robbery and murder at Oak Park Inn, the defendant had been telling Beaver that unless Beaver also killed someone, the defendant would kill Beaver and a member of his family. After further discussion along these lines, they left their room at the Ramada Inn and drove to the Master Host Inn where Beaver robbed and murdered the night manager. The next morning they drove to the Touchstone Stable where Beaver threw the gun in the pond.[1]

Michael Tillman corroborated Beaver's testimony as to the early part of the evening. He testified that he met Beaver and the defendant at the Cushion & Cue at about 7:30 or 8:00 p.m. He invited them to his room at the Oak Park Inn and they joined him there shortly. According to Tillman, both Beaver and the defendant had a pistol. They left together about 9 p.m. Tillman did not see them again that weekend.

James "Mad Dog" Wooten corroborated Beaver's testimony as to the night in question in several particulars. He stated that he was with Beaver and the defendant at the Cushion & Cue and left with them to go to the Chances R. At the Chances R, after a scuffle with a man he had had drug dealings with, Wooten asked the defendant for a gun. The defendant said he couldn't give him the gun because he had

---

[1] Beaver's testimony, recounted above, was given under a combination plea bargain and grant of immunity which provided that he would plead guilty to both armed robberies and receive a total sentence of 25 years' imprisonment, and that he would not be prosecuted for either murder. This arrangement was fully disclosed to the jury.

other plans for it. Wooten then left the Chances R with two women and went to the party at Richard Johnson's home. Shortly after he arrived, Beaver and the defendant arrived as did a man named Peaches. They stayed about 20 minutes. Wooten left with Paula Knight.

In addition to his testimony regarding the night of the crimes, Wooten testified that he saw the defendant some 5 or 6 days later at the Cushion & Cue and the defendant told him that he and Beaver had committed the motel murders but he was not worried about being prosecuted for it. He quoted the defendant as having said "even though we done it, there ain't no witnesses, nobody can prove it, so I'm not worried about it."[2]

Paula Knight testified that she saw Wooten and Beaver, but not the defendant, at the Cushion & Cue on February 25, 1978. She saw Wooten about 12:30 a.m. at the Chances R, where she also saw both Beaver and the defendant. She left the Chances R with Wooten and another woman, picked up her brother at her sister's house, and proceeded to the party at Richard Johnson's. Shortly before she and Wooten left (about 3:00 a.m. or a little earlier), Beaver and the defendant arrived. She spent the rest of the night with Wooten.

Ernest Prescott testified that he saw Beaver and the defendant at the Chances R on February 25, 1978. He and his wife stayed until the bar closed at 2 a.m., as did Beaver and the defendant. He confirmed Paula Knight's testimony that she had left earlier with Wooten and another woman.

The state introduced other evidence to the effect that the victim, Norman Pitts, was shot at the Oak Park Inn sometime after 3:15 and before 4:00 a.m., that the cash box which was kept in the cash drawer in the motel office was missing when Mr. Pitts' body was discovered and was later retrieved from the woods where Beaver testified the defendant had thrown it, that the bullet removed from the victim's head and a slug found on the floor of the office were both fired by the .38 Rossi revolver which was recovered from a pond near Touchstone Ridge, and that the Ramada Inn registration form in the name of James Wooten was actually filled in by the defendant.

---

[2] Wooten was arrested and interrogated in connection with these crimes. The testimony recounted above was in the last of five statements he made to the police on April 1, 1978. In one statement he said that he drove Beaver and the defendant to the motels and that two women were in the car with them. In another he stated that a third woman was with them and that she entered the motels with Beaver and fired the shots herself. Wooten was given full immunity from prosecution for both murders and both armed robberies. He was cross examined as to his inconsistent statements and his grant of immunity was introduced into evidence.

1. Defendant's first enumeration of error is that the trial court erred in failing to dismiss the indictment because two successive grand juries failed to return an indictment against him even though they had knowledge of the crime. Defendant seeks to equate the failure to return an indictment with the return of a "no bill." Code Ann. § 27-702. This argument was rejected by this court in defendant's appeal from the denial of his habeas corpus petition brought prior to his indictment. *Chafin v. Jones,* 243 Ga. 267 (253 SE2d 389) (1979). Defendant's argument that our prior decision in his habeas action is not controlling is not well taken. We held that his petition for habeas corpus was moot because he had been indicted by the time our decision was rendered. *Chafin v. Jones,* supra, 243 Ga. at 268. Were his argument sound, the habeas petition would not have been moot and he would have been entitled to release despite the indictment.

2. Defendant's second enumeration of error is that the trial court erred in failing to disqualify the district attorney and assistant district attorney from participation in this case. The alleged basis for disqualification was that an assistant district attorney had served as law assistant to Judge William R. Killian of the Brunswick Judicial Circuit at a time during which bond hearings and the habeas corpus action concerning this defendant were held, and another defendant was tried for these crimes.[3] The defendant's pretrial motion was overruled. As the trial commenced, defendant renewed his motion, noting that at the time it was overruled Judge Killian's former law assistant was not participating in this case, but that he had observed she was in the courtroom taking notes. We find that the fact that an assistant district attorney has previously served as a law assistant for a judge in a judicial circuit during a time period in which proceedings involving a particular defendant or crime have been heard does not disqualify the district attorney or the other attorneys in the district attorney's office from prosecuting that defendant.

*Gaulden v. State,* 11 Ga. 47 (1852), relied on by the defendant, is inapposite. In *Gaulden,* a former solicitor general who, while in office, had instituted the prosecution and indictment of James and Patrick Cody, appeared as defense counsel at their trial. Upon the state's objection, the trial court excluded Gaulden from representing the defendants. This court affirmed, noting that "his communication with the prosecutor, the witnesses, and the Grand Jury, afford him the means of ascertaining many facts, which only those who are *officially* connected with the government can know." Id. at 50.

---

[3] This trial was presided over by Judge Gordon Knox, Jr.

Compare Ethical Considerations 4-5 and 9-3 (241 Ga. 683, 719). There has been no showing that this former law assistant had any responsibility as to this case while holding that position or that this law assistant had any communication with the prosecutor, witnesses or jurors. A law assistant, like the judge, knows only what is a matter of public record. The fact that a former law assistant may be more familiar with the judge's reasoning process does not disqualify the former assistant from appearing in cases before that judge. Certainly it does not disqualify the former law assistant's new associates from appearing before a different judge in the same circuit. The trial court did not err in overruling the pretrial and trial motions to disqualify the district attorney and the assistant district attorney.

3. Defendant's third enumeration of error is that the testimony of his accomplice, Beaver, was not corroborated as required by Code Ann. § 38-121. Beaver's testimony was, however, corroborated by the testimony of James Wooten that the defendant had admitted committing these crimes, as well as by the testimony of several witnesses who confirmed that Beaver and the defendant were together on the night of the crimes, and had a gun with them. *Birt v. State,* 236 Ga. 815 (2) (225 SE2d 248) (1976), cert. den. 429 U. S. 1029 (1976). (The evidence was sufficient to enable a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)).

In this same connection (corroboration of the testimony of an accomplice) defendant complains that the court failed to give a requested charge, particularly that part which read: "[I]nsofar as the participation and identity of the accused is concerned, there must specifically be independent corroborating evidence which tends to connect the accused with the crime." The trial court's charge on corroboration included the following: "Insofar as the participation and identity of the accused is concerned, there must be independent, corroborating testimony which tends to connect the accused with the crime."

4. Defendant's next enumeration of error is that the court erred in failing to require the state to furnish the defendant a list of witnesses as required by law. More specifically, he complains that the witness list provided contained the names of 213 persons but only 27 were called. The record of the pretrial motions shows that the state had given the defendant a list of over 200 witnesses at arraignment. At the hearing on the pretrial motions, the defendant moved to require the state to provide a realistic witness list. The state then provided defendant with a witness list broken down into two components — a list of 142 possible witnesses whom the state did not expect to call, and a list of 71 witnesses whom the state expected to

use. The defendant's renewed motion was overruled. The state in fact called 27 witnesses at trial, all but two of whom were on the list of 71 witnesses which had been provided to the defendant.[4] The principal investigating officer testified that between 500 and 1000 people were interviewed in connection with this case.

Although we would disapprove a practice of overlisting witnesses, we find that the record in this case shows no such abuse. Defendant does not assert that the length of the witness lists reflected bad faith on the part of the state and there is no evidence that would support such an assertion if made. The district attorney offered to identify the witnesses as to the Pitts murder and when the state called the witness who was on the list provided at arraignment but not on the later list, the trial was recessed to give defense counsel an opportunity to interview him and when he was called, defense counsel stated he had no objection to his testifying. Furthermore, defendant does not cite any prejudice but argues that prejudice should be presumed. We disagree. Absent a showing of prejudice or of bad faith, the provision to the defendant by the state of a witness list winnowed from over 200 names down to 71 possible witnesses, in a case where 500-1000 possible witnesses have been interviewed, does not constitute a denial of the defendant's rights. *Emmett v. State,* 232 Ga. 110, 116 (5) (205 SE2d 231) (1974); *Griffin v. State,* 133 Ga. App. 508 (1) (211 SE2d 382) (1974).

5. Defendant argues that the trial court erred in failing to strike two jurors for cause and in excusing one juror for cause. We will consider the two jurors who were not disqualified for cause first. Both expressed reservations about sitting on this jury, one because his wife had formerly been a motel desk clerk, the other because he had met both the father of the victim and the man who was manager of the Oak Park Inn at the time of the crime. Both also stated that they were not biased toward either the defendant or the state, and that they would follow the charge of the court and render a true and faithful verdict based on the evidence. We find no error in the trial court's refusal to strike these jurors for cause. *Welch v. State,* 237 Ga. 665 (5) (229 SE2d 390) (1976).

The third juror was struck for cause because she stated that she would not consider the death penalty regardless of the facts and circumstances of the case. (The state sought the death penalty but

---

[4] One of these two witnesses was on the original witness list provided at the arraignment and the other apparently became known during the course of trial. Defendant does not assert that the trial court erred in allowing these two witnesses to testify.

the jury set the punishment at life imprisonment.) We find no error in her exclusion. Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776) (1968); *Smith v. State,* 235 Ga. 620 (5) (221 SE2d 41) (1975).

6. At the pretrial hearing in this case, defendant made a nonspecific motion for discovery of exculpatory material under Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). See United States v. Agurs, 427 U. S. 97 (96 SC 2392, 49 LE2d 342) (1976); *Timberlake v. State,* 246 Ga. 488 (2) (1980). Following an in camera inspection of the state's file, the trial court ordered the state to give the defendant copies of two written statements given to police by James Wooten (see footnote 2). This was done. At that pretrial hearing, the police officer in charge of the investigation testified as to three other oral statements given to him by Wooten. At the beginning of his cross examination of Wooten at trial, defense counsel renewed his Brady motion and moved for a mistrial, arguing that he should have been provided with the police officer's contemporaneous notes regarding these inconsistent and exculpatory statements. The trial court ordered that any notes be provided to the defendant and overruled the motion for a mistrial. The defendant makes no showing that the officer's notes added to or differed from his testimony at the pretrial hearing. Thus the content of the officer's notes was furnished to defendant prior to trial. Brady prohibits suppression by the prosecution, after request, of evidence favorable to the accused which is material either to guilt or punishment. Brady requires that such favorable evidence be made available to the defendant at or before trial. There was no suppression here.

7. Defendant argues that the court erred in failing to charge, absent a request, on felony murder, and that the court erred in sentencing him for both the murder and the armed robbery because the armed robbery is an included offense. The indictment alleged malice murder and armed robbery and the evidence was sufficient to support the jury's verdicts that he was guilty of both (Division 3, supra). Armed robbery is not a lesser included offense of malice murder. *Dick v. State,* 246 Ga. 697 (4) (1980).

8. Defendant argues that the trial court erred in not instructing the jury (a) on voluntary manslaughter and (b) that the jury had an inherent power to pardon the defendant for any crime charged or included in the indictment. We find these enumerations without merit.

The evidence presented by the state is recounted above. It shows a premeditated murder. The defendant did not present any evidence. As a matter of law there was not even slight evidence of voluntary manslaughter; thus the court did not err in not charging on it.

*Gillespie v. State,* 236 Ga. 845 (225 SE2d 296) (1976).

As for his second contention, defendant relies on *Oglesby v. State,* 243 Ga. 690, 693 (256 SE2d 371) (1979). The reference in *Oglesby* to the jury's "inherent pardoning power" points out that a jury may in fact return a verdict of voluntary manslaughter although it believes beyond a reasonable doubt that malice murder was committed. There was evidence in *Oglesby* to support a finding of murder or voluntary manslaughter. Recognizing that for a number of reasons a jury may not return a verdict of guilty of murder is a far cry from holding that a trial court must instruct a jury that they may ignore the law and the evidence in returning their verdict. The court is not required to instruct the jury as to their "inherent pardoning power" during the guilt-innocence phase of a criminal trial.

9. Defendant complains that two exhibits, a registration form and a receipt from the Ramada Inn, were improperly admitted over objection because they were not properly authenticated as records made in the regular course of business. Code Ann. § 38-711. The clerk who was on duty at the time Beaver and the defendant registered at the motel testified and identified her handwriting. She also testified as to normal registration procedures. We find no error here.

Defendant next complains that the court erred "in putting itself into the case on the side of the prosecution" when it insisted upon more specific identification of another exhibit as a business record. This translates into a contention that the court erred in giving reasons for sustaining defendant's objection to a state's exhibit. Defendant did not object to the court's giving reasons for sustaining his objection when it was sustained. This enumeration is without merit.

Defendant complains of the admission of another exhibit on the ground its admission violated his constitutional rights, relying on Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). This exhibit is a property receipt card signed by the defendant which is kept in the normal course of business by the Brunswick Police Department. The state introduced it at trial to allow the state's handwriting expert to analyze and compare the signature to the handwriting on the Ramada Inn registration and receipt. We find that none of defendant's constitutional rights were violated by the introduction at trial of this exhibit. Gilbert v. California, 388 U. S. 263, 266-67 (87 SC 1951, 18 LE2d 1178) (1967).

10. Defendant complains of the trial court's failure to give three requested charges. We have reviewed the record and find that these requests to charge were either not adjusted to the evidence in this case or were covered by the charge given by the court. See *Carnes v. State,* 115 Ga. App. 387 (Div. 6 at 393) (154 SE2d 781) (1967), cert.

den., 389 U. S. 928 (1967).

11. Defendant's final enumeration of error is that the trial court erred in not declaring a mistrial based upon the district attorney's putting the defendant's character in issue during the closing argument. After commenting on the use of drugs by defendant's "friends" as shown by the evidence, the district attorney commented that "Birds of a feather flock together." We find it unnecessary to review the closing argument in view of the fact that defendant made no objection or motion for a mistrial. *Daniels v. State,* 230 Ga. 126 (2) (195 SE2d 900) (1973); cf. *Prevatte v. State,* 233 Ga. 929 (6) (214 SE2d 365) (1975).

*Judgment affirmed. All the Justices concur.*

ARGUED OCTOBER 15, 1980 — DECIDED NOVEMBER 14, 1980.

*James V. Pleasants,* for appellant.

*Glenn Thomas, Jr., District Attorney, John B. Johnson, III, Assistant District Attorney, Arthur K. Bolton, Attorney General, W. Davis Hewitt, Assistant Attorney General,* for appellee.