## 37199. DUPREE v. THE STATE.

MARSHALL, Justice.

The appellant, Silas Dupree, Jr., was convicted of the felony murder of Wade Berry Hampton during the commission of a robbery perpetrated by the appellant and an accomplice against the deceased. The appellant was sentenced to life imprisonment, and this is his appeal.

The deceased was 71 years old, and he was a double amputee who was confined to a wheelchair. He shared a house in Ailey, Georgia, with Essie Mae Hamilton, age 70. Ms. Hamilton testified that on the night of September 23, 1978, two men wearing masks over their faces entered their house and demanded money from the deceased. She later overheard one of the men say he was going to get the "Cadillac."

After the men had left, she found the deceased lying on the floor next to his overturned wheelchair. A broken crutch was found in the

vicinity. The deceased had sustained a head injury and a deep cut in his finger. A snakeskin pocketbook in which he kept his money was missing.

Expert medical evidence established that the deceased was suffering from coronary occlusion and myocardial infarction; and he died from a heart failure brought on by the stress caused by, and the injuries incurred during, the robbery.

On the morning of January 9, 1979, GBI agent Martin Moses and Montgomery County Deputy Sheriff Gene Deese had occasion to visit the appellant in Vidalia, Georgia, in connection with a complaint he had filed concerning attempted damage to his automobile. Their suspicions were aroused, because the appellant owned a Cadillac and because he fit the general description of one of the perpetrators of the Hampton homicide. They asked the appellant if he had any knowledge of the Hampton homicide. He stated that he was not involved, and he agreed to have a polygraph examination administered to him to confirm his lack of involvement.

The GBI agent and deputy sheriff made arrangements for the appellant to take a polygraph examination in Douglas, Georgia, on January 9. The three of them left to go to Douglas at approximately 10:30 a.m. The polygraph examination was administered to the appellant, and he and the two law enforcement officials ate lunch together. They returned to Mount Vernon at approximately 5:00 or 5:30 p.m. En route to Mount Vernon, the appellant was informed that he had not passed the polygraph examination. Upon arriving in Mount Vernon, the appellant accompanied the GBI agent and deputy sheriff to the law library in the courthouse. He was given Miranda warnings, and he subsequently gave an oral statement to the GBI agent admitting his involvement in the Hampton homicide. Although the appellant refused to sign the statement after it was reduced to writing, testimony by the deputy sheriff shows that the appellant later repeated the statement to the county sheriff. At no time during the day did the appellant ask to use the telephone, or to speak with an attorney, or to leave. However, the GBI agent did testify that after he was informed that the appellant did not pass the polygraph examination, the appellant probably would not have been permitted to leave if he had so requested.[1]

---

[1] In this connection, we note the statement in United States v. Mendenhall, 446 U. S. 544, (IIA) 554 (100 SC ——, 64 LE2d 497, 509) (in which Division, Justices Stewart and Rehnquist concurred) that "[w]e conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Footnote 6, following that statement, then states, "We agree with the

The appellant was indicted for robbery and malice murder of the deceased by striking his head with an unknown blunt object. As previously stated, the appellant was convicted of felony murder.

Prior to trial, a Jackson v. Denno hearing was conducted outside of the presence of the jury. The trial judge ruled that the appellant's oral statement was made by him freely and voluntarily and that it was not the product of an illegal arrest. Accordingly, the trial judge ruled that testimony concerning this oral statement was admissible in evidence.

1. In the first two enumerations of error, the appellant argues that the trial judge erred in overruling his motions for directed verdict of acquittal and new trial on evidentiary grounds.

Contrary to the appellant's contentions, the evidence authorized a rational trier of fact in finding beyond a reasonable doubt that a robbery was perpetrated against the deceased, that the appellant was one of the perpetrators of the robbery, and that the conduct of the appellant in perpetrating the robbery constituted the proximate cause of the death of the deceased. See generally, *Redfield v. State,* 240 Ga. 460 (1) (241 SE2d 217) (1978).

These enumerations of error are without merit.

2. In the third enumeration of error, the appellant argues that the trial judge erred in permitting the GBI agent to give testimony of the oral statement allegedly made by the appellant. The appellant contends that this statement was the product of an illegal arrest and thus inadmissible under the Fourth Amendment. Dunaway v. New York, 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979).

It is true that even though proper Miranda warnings may have been given prior to a defendant's making an incriminatory statement and even though the statement may have been "voluntary" for Fifth Amendment purposes, the statement is nonetheless inadmissible under the Fourth Amendment if it is the product of an illegal "seizure." Dunaway v. New York, supra. However, in this case, the trial judge was authorized in finding that the appellant had never been "seized" within the meaning of the Fourth Amendment, in that he had voluntarily agreed to accompany the police to Douglas to take the polygraph examination. Cf., Dunaway v. New York, supra. The appellant did nothing prior to making the incriminatory statement, such as requesting to leave or speak with an attorney, that would require a finding that the appellant had been placed involuntarily in

District Court that the subjective intention of the DEA agent in this case to detain the respondent, had she attempted to leave, is irrelevant except insofar as that may have been conveyed to the respondent."

police custody. Therefore, we hold that the trial judge did not err in ruling that the statement made by the appellant was not the product of an illegal arrest.

This enumeration of error is without merit.

3. In the fourth enumeration of error, the appellant argues that the trial judge erred in permitting the deputy sheriff to testify that the appellant repeated to the sheriff the oral statement which he allegedly made to the GBI agent. The deputy gave this testimony in rebuttal, after the appellant testified that he had not made the statement to the GBI agent. The appellant contends that another Jackson v. Denno hearing should have been held prior to admitting the deputy's testimony, in order to determine the voluntariness of the appellant's alleged repetition of the statement to the sheriff.

In the deputy's rebuttal testimony, he testified to the fact that the appellant repeated to the sheriff his earlier statement to the GBI agent; the deputy did not give testimony concerning the substance of the statement. As stated by the prosecuting attorney in the presence of the jury at trial, the deputy's rebuttal testimony was offered solely for the purpose of showing that this statement was in fact made by the appellant and that it was made voluntarily. Under these circumstances, it was not necessary for the trial judge to conduct another Jackson v. Denno hearing before admitting the deputy's testimony. See *Farley v. State,* 145 Ga. App. 98 (1) (243 SE2d 322) (1978).

This enumeration of error is without merit.

4. In the final enumeration of error, the appellant argues that the trial judge erred in not providing the defense with certain items of evidence requested by pretrial motions, to wit: (1) the statement allegedly made by the appellant to the sheriff, as testified to by the deputy; (2) an autopsy report prepared by the State Crime Laboratory, as well as another autopsy report prepared by a Vidalia physician; and (3) a report of the State Crime Laboratory concerning the broken crutch found in the home of the deceased, which is purportedly the "blunt object" which the indictment alleges struck the deceased in the head.

The appellant was provided with a copy of the written statement which he had given orally to the GBI agent. As held in Division 3, supra, this was the same statement which the appellant repeated to the sheriff. Therefore, the trial judge satisfied the appellant's request by providing him with one written reproduction of this statement. The contents of the autopsy report prepared by the State Crime Laboratory were made available at trial. Therefore, there was no suppression of this item of evidence. *Chafin v. State,* 246 Ga. 709 (6) (273 SE2d 147) (1980). As to the contents of the autopsy report

prepared by the Vidalia physician, as well as the crime laboratory report concerning the broken crutch, the appellant has failed to show: (1) that this evidence was favorable and material, *Stevens v. State,* 242 Ga. 34 (1) (247 SE2d 838) (1978); and (2) that the failure of the trial judge to order that the defense be provided with this evidence denied the appellant a fair trial. *Wisdom v. State,* 234 Ga. 650, 652 (217 SE2d 244) (1975).

This enumeration of error is without merit.

5. Finally, we note that Code Ann. § 27-1302 (Ga. L. 1980, p. 1388) does allow the defendant to obtain a copy of any statement given by him while in police custody. And Code Ann. § 27-1303 (Ga. L. 1980, p. 1388) allows the defendant to discover a copy of any written scientific reports in the possession of the prosecution which will be introduced in the prosecution's case in chief or in rebuttal against the defendant. However, this trial was held in early February of 1980, and these Code sections did not become effective until April 1, 1980. Therefore, they are not applicable here.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 15, 1981.

*Dennis Mullis,* for appellant.

*Phillip R. West, District Attorney, Arthur K. Bolton, Attorney General, Mary Beth Westmoreland, Assistant Attorney General,* for appellee.