37184. SABEL v. THE STATE.

HILL, Presiding Justice.

The defendant was indicted and convicted of seven counts of criminal interference with government property as follows: spraying the State Capitol Building with black paint, spraying the State Highway Building with black paint, spraying the State Health Building with black paint, spraying the State Revenue Building with black paint, spraying the Plaza Park entrance wall with black paint, spraying the Vietnam Memorial with black paint, and spraying the statue of Thomas Watson with black paint.

The evidence showed that at 10:10 p.m. on Sunday, March 16, 1980, a State Building Authority security officer saw no markings on

the buildings in the Capitol area. When his replacements went on patrol at about 11:10 p.m., they noticed "May Day," "Take History Into Our Hands" and "May 1, 1980" painted on the Revenue (Trinity-Washington) Building. As they approached the Capitol in their truck they saw similar markings on the steps of the Capitol and saw a man wearing a brown jacket and jeans, later identified as the defendant, hurriedly descending the steps. That area of the Capitol the defendant was leaving had been painted "May Da" (sic). To avoid going the wrong way on a one-way street, the security guards circled the Capitol and stopped the defendant, who was then across the street.[1] One guard asked the defendant what he had been doing on the steps of the Capitol. He also asked the defendant to remove his hands from his pockets as a precautionary measure and to see if he had paint on them.[2] The defendant complied, revealing what appeared to be black paint on both hands. The defendant was then asked to accompany the guards to the security office. A can of black spray paint was found near the site of the arrest. Thirty-seven slogans had been painted on the state's buildings, wall and statues ranging in size from one to twenty-five feet in length and one to three feet in height. All the slogans had one central theme, to publicize May Day, 1980.

The defendant was sentenced to seven, three-year concurrent sentences, six months to be served with the balance probated. The trial judge also imposed a fine of $1,000 and ordered restitution in the amount of $3,200. Defendant appeals the denial of his motion for a new trial.

1. Defendant contends that the trial court erred in refusing to suppress evidence (paint swabbings from his hands) obtained as a result of the search and seizure incident to his arrest. Defendant argues that he was arrested prior to the time the security guard learned that he had paint on his hands and that the guard lacked probable cause to arrest him at that time. He bases this argument on the testimony of one of the guards who stated that the defendant stopped when the guard asked him to, and that he would have physically restrained the defendant if he had not stopped when asked to do so.

A police officer may ask a citizen to stop without there being a "seizure" within the meaning of the fourth amendment. *State v.*

---

[1] One guard testified that he identified the defendant as the person on the Capitol steps based on his attire and hair. The other guard testified that he identified the defendant based on his profile and facial features.

[2] On cross examination, the guard testified that he asked another man walking near the defendant to remove his hands from his pockets to see if he had paint on them. He did not have paint on his hands and was allowed to proceed.

*Reid,* 247 Ga. 445 (276 SE2d 617) (1980). A person is seized only when by means of physical force or show of authority his freedom of movement is restrained. Terry v. Ohio, 392 U. S. 1, 19, fn. 16 (88 SC 1868, 20 LE2d 889) (1968); United States v. Mendenhall, 446 U. S. 544, 553 (100 SC 1870, 64 LE2d 497) (1980) (opinion of Stewart, J.). The subjective intention of the officer to detain the defendant had he attempted to leave is irrelevant except insofar as that intention may have been conveyed to the defendant, United States v. Mendenhall, supra at 554, fn. 6; *Dupree v. State,* 247 Ga. 470, fn. 1 (277 SE2d 18) (1981). Here there was probable cause to arrest the defendant whether the seizure occurred before or after black paint was found on his hands. The trial court did not err in overruling the motion to suppress.

2. Defendant contends that Code § 26-2613 (a) is unconstitutional in that it is vague, overbroad, discriminatory, ambiguous and subject to other constitutional defects. Code § 26-2613 (a) provides: "A person commits interference with government property when he destroys, damages or defaces government property and upon conviction thereof shall be punished by imprisonment for not less than one nor more than five years."

In support of his contention that the statute is unconstitutionally vague, defendant points to Connally v. General Construction Co., 269 U. S. 385, 391 (46 SC 126, 70 LE 322) (1926), which requires a penal statute to "be sufficiently explicit to inform those who are subject to it what conduct . . . will render them liable to its penalties. . . . And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Defendant further urges that it is unnecessary to examine his conduct in deciding this issue since it is sufficient that a vague and overbroad statute lends itself to discriminatory enforcement in unpopular cases.

Defendant argues that Code § 26-2613 is vague inasmuch as it fails to define "deface." Where a word is not defined in a statute, it generally will be given its ordinary meaning. Code § 102-102 (1). Webster's Third New International Dictionary defines "deface" as "to destroy or mar the face or external appearance of." Black's Law Dictionary provides a similar definition: "To mar or destroy the face. . . . Also used in respect of injury to monument, buildings and other structures. . . ." (4th Ed. 1968). Deface has also been interpreted as synonymous with injure. Saffell v. State, 113 Ark. 97, 99 (167 SW 483) (1914); State v. Fahy, 149 Conn. 577, 580-581 (183 A2d 256) (1962) petition for cert. dismissed, 371 U. S. 943 (1962); see Vaughn v. May, 274 SW 969, 971 (Mo. App. 1925). Deface has been defined further:

"[t]o mar the face or surface of, disfigure or spoil the appearance of. . ." 26A CJS 124, Deface (1956). Thus, to deface, in both legal and lay parlance, is readily understood as meaning "to injure or mar the face of." As such, the General Assembly has enacted a "precise, narrowly drawn regulatory statute which proscribes certain specific behavior. [Cit.] It prohibits a particular type of conduct. . . ." Cox v. Louisiana, 379 U. S. 559, 562 (85 SC 476, 13 LE2d 487) (1965). The conduct prohibited here is the destroying, damaging or defacing of government property. An average person of common intelligence can understand from reading the statute that spray painting state-owned buildings and statues is prohibited. See Joyce v. United States, 454 F2d 971, 983 (D.C. Cir. 1971), cert. denied, 405 U. S. 969 (1972); see also *Horowitz v. State,* 243 Ga. 441 (254 SE2d 828) (1979).

Defendant argues that the statute is overbroad. Relying on Landry v. Daley, 280 FSupp. 938, 951 (N.D. Ill. 1968), defendant urges that the concept of overbreadth "rests on principles of substantive due process which forbid the prohibition of certain individual freedoms. . . . [T]he issue is whether the language of the statute, given its normal meaning, is so broad that its sanctions may apply to conduct protected by the Constitution."

A statute will be struck as overbroad when it proscribes or can proscribe constitutionally protected conduct. Tribe, American Constitutional Law, § 12-24 (1978). The statute in question here is not overbroad inasmuch as it prohibits nothing that the state or federal constitutions protect. Id. The statute does not prohibit speech, nor does it restrict associational freedom; it prohibits the destruction, damaging and defacing of public property. Defendant has no "right" under the state or federal constitutions to destroy, damage or deface government property.

Defendant argues that the statute omits the words "intentionally" and "knowingly" and urges that without a requirement of scienter that it is unconstitutional. We are aware of no requirement that every separate criminal statute contain the word "intentionally." Code § 26-601 provides: "A crime is a violation of a statute of this State in which there shall be a union of joint operation of act, or omission to act, and intention, or criminal negligence." The trial judge charged this section and also charged that "intent to commit the crime charged in this indictment is an essential element that the State must prove beyond a reasonable doubt." Thus, under the charge of the court, defendant could not have been found guilty unless the essential element of intent had been found beyond a reasonable doubt.

Defendant contends that the statute invites selective and discriminatory enforcement and is therefore facially void and

unconstitutional. He argues that the trial court took judicial notice that a large number of protesting farmers assembled at the State Capitol and permanently damaged and defaced government property but that none of them was arrested or prosecuted; they were met with speeches. On the contrary, the trial court stated only that "I don't know if that is really something I can properly take judicial notice of. . . ." We agree. Certainly the trial court could not take judicial notice that the farmers intended to damage government property. Moreover, before a statute will be stricken on this ground, it must possess some feature, such as a reasonably imprecise or ambiguous standard, that invites irrational or arbitrary patterns of enforcement. Joyce v. United States, supra, 454 F2d at 984; Cox v. Louisiana, supra, 379 U. S. at 568-569. Since we are not addressing an ambiguous or imprecise statute here, defendant's argument must fail.

Defendant relies on Gooding v. Wilson, 405 U. S. 518 (92 SC 1103, 31 LE2d 408) (1972), in support of his attack on first amendment grounds. That case held former Code § 26-6303 unconstitutional on its face. Since that statute punished only spoken words and had not been construed in a sufficiently narrow manner so as to avoid constitutional infirmities, Gooding v. Wilson is inapplicable. In the instant case, the statute proscribes conduct, not words. Code § 26-2613 "is an appropriately narrow means of protecting [government property] and condemns only the independent noncommunicative impact of conduct within its reach. . . ." United States v. O'Brien, 391 U. S. 367, 382 (88 SC 1673, 20 LE2d 672) (1968); Tribe, American Constitutional Law, § 12-3, (1978). Thus, the statute is not unconstitutional under the first amendment.

Defendant further contends that Code § 26-2613 creates an arbitrary and impermissible classification of property rights in that it applies only to government property and not to private property. He urges that the statute denies him equal protection of the laws by "arbitrarily raising the rights of the state to protect its property to a higher level of sanctity than that of the private citizen. . . ."

Code § 26-2613 seeks to protect government property. Since the statute does not abridge a fundamental right and does not involve a suspect class, the standard of review is "that the classification not be arbitrary or unreasonable [cit.] and that a fair and substantial relationship exist between the classification and the purpose of the law." Bickford v. Nolen, 240 Ga. 255, 256 (240 SE2d 24) (1977). This classification is appropriate for several reasons. Damage to public buildings from which government serves its citizens affects adversely each and every citizen, both in the delivery of services and in the cost of repair. Government also has an interest in keeping its buildings

open to the public simply so that its processes may be observed. Hence damage to government property impairs public accessibility as well as government operation itself. Similarly, defacement necessitates repair and repair decreases access and increases costs. Moreover, since public property is generally more accessible than private property, it is necessary to provide more protection. Since this classification is neither arbitrary nor unreasonable and there is a fair and substantial relationship between the classification and the purpose of the law, Code § 26-2613 does not unconstitutionally deprive defendant of equal protection of the law. Nor do we perceive any constitutional infirmity in the fact that the conduct proscribed by Code § 26-2613 may also be within the purview of Code § 26-1502. See *Knight v. State,* 243 Ga. 770, 771 (257 SE2d 182) (1979).

Thus defendant's constitutional attacks are without merit.

3. The defendant argues that the trial court erred in admitting evidence which put his character in issue, namely testimony and photographs showing that on May 1, 1980, after his indictment, the defendant appeared on the podium of a lawful May Day rally conducted by the Revolutionary Communist Party at which posters saying "Take History Into Our Hands" were displayed. Defendant argues that attending a lawful political rally is not similar to painting slogans on government buildings. He also argues that the exclusionary rule applicable where the fourth amendment has been violated should be expanded to include violations of the first amendment.

The defendant also argues that his character was impermissibly placed in evidence when a police officer testified that he arrested the defendant in August, 1978, at about 10:30 p.m. for spray painting a highway retaining wall about a mile from the Capitol with the words "Long Liv" [e Mao] in black paint.

We find no error in the admission of this evidence.

4. Defendant contends that the trial court erred in permitting the jury to consider seven separate counts of the same offense since they were committed at the same time and place with the one general intent, design and scheme, of publicizing May Day. The defendant was not indicted for publicizing May Day; he was indicted for and convicted of defacing four state buildings, two statues and one wall. Each count required the state to prove different facts and each of the seven spray paintings involved a separate intent to deface each of the individual properties. This enumeration of error is without merit.

Defendant contends that the trial court erred in charging on parties to a crime. He argues that there were 37 separate slogans, some up to 25 feet in length, at 7 different places painted in different handwriting in a very short time period. He contends there was no

evidence that another "party" participated in painting these slogans — which had as their central theme to publicize May Day, 1980. He argues that some of the painting may have been done after he was arrested. We find no error here. Code § 26-801. A person may be found guilty of a crime committed by more than one person even though the identity of other participants is unknown. Code § 26-802.

Defendant argues that the evidence against him was purely circumstantial and that there were several reasonable hypotheses consistent with innocence; e.g., he may have been painting earlier in the day and happened to be in the capitol area that night. "Questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law." *Harris v. State,* 236 Ga. 242, 245 (223 SE2d 643) (1976). The verdict is not unsupportable as a matter of law; there was sufficient evidence from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

5. Defendant asserts that the trial court erred in refusing to strike for cause a City of Atlanta police officer. In *Hutcheson v. State,* 246 Ga. 13 (268 SE2d 643) (1980), decided shortly before but not printed until after defendant's trial, we held that when full-time police officers are challenged for cause in criminal cases, such challenges must be granted. The necessity for this rule is apparent in this case where three higher ranking police officers of the Atlanta Police Department testified for the state at defendant's trial.

The state argues that the defendant should have used his last peremptory strike to remove the police officer and that his failure to exhaust his peremptory strikes shows there was no harmful error. The defendant argues that the reason he failed to use his last peremptory strike was that, by striking the police officer with his last strike, he would have had to accept the next juror whom he had also moved to strike for cause and who was less acceptable to him than the police officer. A statement to this effect was made on the transcript when the officer was accepted as a juror. Thus, the defendant argues the error was not harmless. Cf. *Blankenship v. State,* 247 Ga. 590 (277 SE2d 505) (1981), concurring opinion by Gregory, J. In view of the fact that reversal is mandated by the next division of this opinion, we do not find it necessary in this case to resolve this issue.

6. Defendant argues that the trial court committed reversible error in denying his pretrial motion to permit an expert of his choice to examine, at defendant's expense, critical evidence used to convict

him. Defendant urges that his expert should have been allowed to test and compare the samples of paint taken from his hands and those taken from the state-owned property. Here the state's expert conducted a test which showed, according to his testimony, that the samples taken from the defendant and those taken from the Capitol "could have had a common origin." The state's expert acknowledged that tests other than the one he conducted are more accurate, including at least one such test available to the state at Georgia Tech.

Defendant relies on Barnard v. Henderson, 514 F2d 744 (5th Cir. 1975), in support of his argument. In Barnard, the court reversed denial of habeas corpus relief because the petitioner's pretrial motion to allow an expert of his choosing to inspect the murder weapon and bullet had been denied. The evidence against Barnard consisted of the following: The victim had a car which the sheriff had seized from Barnard; on the night before the murder Barnard threatened to kill the victim; the victim was murdered in Lake Charles, Louisiana, the following day between 8 a.m. and noon; Barnard stole a car and left town that afternoon with Dawn Myslinski; they went to Virginia, then to Illinois where, according to Barnard, he obtained a .22 Ruger pistol from Frank Myslinski, then to Ohio, where Barnard sold the pistol; Frank Myslinski owned a .22 Ruger pistol but did not know the victim and had never been to Lake Charles; the victim was killed with a .22 caliber bullet, 75% of which was destroyed; two state ballistics experts testified that the remaining 25% of the bullet showed that it had been fired from the Ruger pistol Barnard sold in Ohio. State v. Barnard, 287 S2d 770 (La. 1973).

The Fifth Circuit, noting that the issue was the defendant's right to the means necessary to conduct his defense rather than his right to discovery, held (514 F2d at 746): "Fundamental fairness is violated when a criminal defendant on trial for his liberty is denied the opportunity to have an expert of his choosing, bound by appropriate safeguards imposed by the Court, examine a piece of critical evidence whose nature is subject to varying expert opinion."

In *Patterson v. State,* 238 Ga. 204 (232 SE2d 233) (1977), we held that a defendant charged with possession of marijuana has the right to an independent analysis of the alleged marijuana. In *Moore v. State,* 240 Ga. 807 (5) (243 SE2d 1) (1978), we held that *Patterson,* supra, was applicable only to narcotics cases, where the question of the identity of the alleged prohibited substance was determinative of guilt or innocence. See also *Emmett v. State,* 243 Ga. 550 (3) (255 SE2d 23) (1979); *Martin v. State,* 151 Ga. App. 9 (6) (258 SE2d 711) (1979). We now hold that the due process requirements of *Patterson* and Barnard are not limited to narcotics cases. A criminal defendant on trial for his liberty is entitled on motion timely made to have an

expert of his choosing, bound by appropriate safeguards imposed by the court, examine critical evidence whose nature is subject to varying expert opinion.

We find that the paint was critical in the case before us, that the motion was timely made, and that the evidence was subject to varying expert opinions. For this reason, the defendant is entitled to a new trial after an expert of his choosing has examined the paint samples.

Whether the evidence is "critical" is discussed in White v. Maggio, 556 F2d 1352, 1356, 1358 (5th Cir. 1977), and depends upon whether a specific or general request was made.[3] Whether the evidence is "subject to varying expert opinion" is also discussed in White v. Maggio, supra. As for whether the request is timely, see *Patterson v. State,* supra; United States v. Herndon, 536 F2d 1027 (5th Cir. 1976).

Regarding appropriate safeguards imposed by the court, we held in *Patterson,* supra, that the state is not required to relinquish control and supervision of the alleged narcotic substance and found that this would generally require that the defendant's expert examine the substance in the state laboratory. We adhere to that standard as to "critical" evidence; such evidence should remain in the state's control and supervision even if the testing, due to more sophisticated equipment elsewhere, is conducted away from the state laboratory. The trial court may require that the defendant's expert be qualified as such in advance of testing and agree to be available as a witness on the date or dates on which the trial is scheduled. Moreover, in view of the right of a defendant in a criminal case to obtain copies of scientific reports (Ga. L. 1980, p. 1388; Code Ann. § 27-1303), we find that requiring the report of the defendant's expert to be reduced to writing and made available to the state will further the search for the truth. If the defendant does not call the expert as a witness, the state may call the defendant's expert without adding his or her name to the list of witnesses, or may argue to the jury that the defendant would have called the expert had the result of the testing been favorable to the defendant. Other safeguards appropriate to the circumstances of the case may be imposed by the trial court.

7. The defendant has urged 31 enumerations of error, some of which are overlapping and many of which have been decided above. As for the remaining enumerations, we express no opinion as to whether they constitute reversible error. Some of the points raised

---

[3] Scientific evidence is not "critical" where there is overwhelming evidence of defendant's guilt. Gray v. Rowley, 604 F2d 382 (5th Cir. 1979), cert. denied, 445 U. S. 944 (1980).

but not decided (enumerations of error 16, 17, and 30) can be avoided on retrial by the following:

(a) It is not necessary for the prosecutor to refer to the defendant as "the prisoner at the bar." Cf. Code § 59-806 (2).

(b) In the absence of any incriminating statement being volunteered, it is not necessary for the prosecutor to elicit from the investigating officer that the defendant was given his Miranda warning and he said he did not have anything to say but wanted an attorney.

The issues raised by the remaining enumerations of error should not re-occur on retrial. For the reasons stated in Divisions 5 and 6 above, the case must be retried.

*Judgment reversed. All the Justices concur, except Marshall and Clarke, JJ., who concur in the judgment only, and Jordan, C. J., who dissents.*

DECIDED JUNE 30, 1981 —
REHEARINGS DENIED JULY 15, 1981.

*Wayne Sabel,* for appellant.
*Lewis R. Slaton, District Attorney, Richard Hicks, Assistant District Attorney,* for appellee.

ON MOTION FOR REHEARING.

The state argues that the trial court's failure to allow the defendant's expert to examine the paint samples (Division 6) was harmless error in this case because the evidence of guilt was overwhelming. The evidence against the defendant was circumstantial and it included the testimony of the state's expert that the samples taken from the defendant and from the Capitol "could have had a common origin." The state relied upon expert evidence on this topic and the defendant was entitled to have an expert of his choosing examine the evidence as set forth in Division 6.

*Motion for rehearing denied. All the Justices concur, except Jordan, C. J., who dissents.*